## 52764. In The Interest Of: J. B.
## 52767. In The Interest Of: A. D. S.

MARSHALL, Judge.

The question presented in these companion cases is whether or not the parental rights of a putative father whose whereabouts are unknown and whose only connection with his child is his putative paternity may be severed by a court which does not have personal jurisdiction over him.

There are two cases appealed, one involving J. B., born November 6, 1975, and the other involving A. D. S., born November 22, 1975. In both cases the mothers of the infants came to the DeKalb County Department of Family & Children Services (Department) and indicated their unwillingness to care for their children and their desire to place them with the department for adoption. Both mothers signed written consents terminating their parental rights in and over their children and placing the children for adoption. The department filed a petition in the Juvenile Court of DeKalb County in accordance with

Ch. 24A-32 of the Juvenile Court Code seeking to terminate the parental rights of the mother and the biological father of the children and to obtain permanent custody of them for the purpose of adoption, attaching to the petitions the written consents of the mothers.

In the case of J. B., the department alleged in its petition that the biological father of J. B. is Neil Pierce, whose last known address, according to the mother, was Leonmeinster, Massachusetts, and the department could not ascertain his whereabouts.

In the case of A. D. S., the department alleged in its petition that the biological father was Robert Reins Sanders, that his whereabouts were unknown, and that a diligent search for him proved futile.

In both cases, the department served the putative fathers by publication under Ga. L. 1971, pp. 709, 728 (Code Ann. § 24A-1702 (b)). That statute provides: "If, after reasonable effort, a party to be served with a summons cannot be found or his post office address ascertained, whether he is within or without this State, the court may order service of the summons upon him by publication in accordance with sections 81A-104 and 81A-105 [CPA §§ 4 & 5]. The hearing shall not be earlier than five days after the date of the last publication." Both petitions alleged that the court had jurisdiction over the putative fathers because their whereabouts were unknown. Neither man was personally served and, as far as the record shows, neither received notice of the termination hearing.

In both cases, there was no admissible evidence,[1] at the hearing or in the record, that the mothers and putative fathers were ever married to each other at the time of the birth of the children; that the fathers knew of the mothers' pregnancies; that the fathers thereafter exercised any parental rights over the children, supported the mothers or children, visited, guided, contacted or even knew of the children's existence.

---

[1] There is in the record a report from a department caseworker stating that the mother of A. D. S. was married to the putative father at the time of conception, but that they were divorced a few weeks later, some eight

The trial judge terminated the parental rights of the mothers but refused to terminate the fathers' rights for the reason that personal service was necessary in order for the court to have jurisdiction. The court therefore refused to commit the children to appellant department for the purpose of adoption because it could not be said that there was "no parent having parental rights" under Code Ann. § 24A-3204 (a). *Held:*

Service by publication, as provided under Code Ann. § 24A-1702 (b) was sufficient to bestow jurisdiction over the putative fathers in each case, under the authority of Mullane v. Central Hanover Bank &c. Co., 339 U. S. 306 (70 SC 652, 94 LE 865). In that case the Supreme Court considered the constitutional propriety of service by publication in a proceeding to settle beneficiaries' interests in certain New York trust funds, many beneficiaries being nonresidents of New York, whose addresses were unknown. The New York statute, which permitted such service, was attacked as not affording due process under the Fourteenth Amendment in that notice to the beneficiaries was inadequate. The Supreme Court held that, regardless of whether the proceeding for settlement of the trust was in rem or in personam, the state courts had the right to determine the interests of all claimants, resident and nonresident, provided the procedure accorded a full opportunity to be heard. The court then undertook to balance the interests of the state against those of the individual nonresident beneficiaries and stated that "a construction of the Due Process Clause which would place impossible or impractical obstacles in the way could not be justified.". . ."The Court has not committed itself to any formula achieving a balance between these interests in a particular proceeding or

months before the child was born. However, this report is hearsay and is disregarded, not having any probative value. *McCrary v. State,* 124 Ga. App. 649 (1) (185 SE2d 586); Green, Ga. Law of Evidence, § 222 (1957). Without evidence that A. D. S. was "born in wedlock or within the usual period of gestation thereafter" (Code § 74-101) the child will be treated for purposes of this decision as illegitimate.

determining when constructive notice may be utilized or what test it must meet. Personal service has not in all circumstances been regarded as indispensable to the process due to residents, and it has more often been held unnecessary as to nonresidents."

The court recognized that notice by publication in a local newspaper is virtually no notice at all to nonresidents and stated that "process which is a mere gesture is not due process." Nevertheless, the court concluded: "This Court has not hesitated to approve of resort to publication as a customary substitute in another class of cases where it is not reasonably possible or practicable to give more adequate warning. Thus it has been recognized that, in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights. Cunnius v. Reading School District, 198 U. S. 458; Blinn v. Nelson, 222 U. S. 1; and see Jacob v. Roberts, 223 U. S. 261.

"Those beneficiaries represented by appellant whose interests or whereabouts could not with due diligence be ascertained come clearly within this category. As to them the statutory notice is sufficient. However great the odds that publication will never reach the eyes of such unknown parties, it is not in the typical case much more likely to fail than any of the choices open to legislators endeavoring to prescribe the best notice practicable." Mullane v. Central Hanover Bank &c. Co., 339 U. S. 306, 317, supra.

There are obviously many differences between Mullane and the present cases. Yet in both situations there are basic factual similarities to which the constitutional precepts discussed in Mullane apply with equal force: the state has a deeply rooted, insistent interest in the welfare of the children (as parens patriae of virtually unclaimed and unwanted infants); a party who may also have an interest (as a putative father) is unknown except by name and his address or whereabouts is unknown; it is not "reasonably possible or practicable" to give more adequate notice, and the state statute allows notice by publication. In these respects, Mullane and the

present cases stand on the same footing. See also *Allan v. Allan,* 236 Ga. 199 (223 SE2d 445). ("If the interested persons are not known or easily ascertainable then notice by publication is sufficient and due process is satisfied.")

Appellee contends that to allow notice by publication in this instance would be contrary to those cases dealing with custody of children such as *Boggus v. Boggus,* 236 Ga. 126 (223 SE2d 103); *Van Gorder v. Van Gorder,* 227 Ga. 255 (179 SE2d 750); *Locke v. Locke,* 221 Ga. 603 (146 SE2d 273); *Carter v. Carter,* 201 Ga. 850 (41 SE2d 532). These cases state that where the issue of child custody is not ancillary to a pending divorce action, the court must have personal jurisdiction over both parents in order to make a valid custody award or to modify a previous custody award. See also May v. Anderson, 345 U. S. 528 (73 SC 840, 97 LE 1221). If the courts may not sever the *custody* rights of a parent without personal jurisdiction, appellee argues, then a fortiori, it may not sever *permanent parental* rights without personal jurisdiction.

It is clear from the facts in each of those cases that the absent parent was the undisputed father or mother of the child and had established an on-going relationship in the past with the child and who would presumptively assert some custody or visitation rights in the future. The putative fathers in the present cases have exercised no such parental rights and have thus shown no interest whatsoever in the children.

Such a distinction has merit because in a termination proceeding, the court is concerned primarily with the welfare of the child, vis-a-vis the parent's rights in the child. "While there must be regard for the rights of parents, the welfare of the child is paramount. *In re Levi,* 131 Ga. App. 348, 352 (206 SE2d 82)." *Elrod v. Dept. of Family & Children Services,* 136 Ga. App. 251, 254 (220 SE2d 726). "When courts deal with inanimate property by the conventional *in rem* proceeding, their principal concern is the distribution of rights in that property, rather than with the welfare of the property apart from its ownership claims. But even where dealing solely with property rights, where concern with the 'res' is minimal and concern with the claimants is paramount, courts may exercise jurisdiction *in rem* over the property without

having personal jurisdiction over all of the claimants. Only when they seek to render a party liable to some personal performance must they acquire personal jurisdiction." May v. Anderson, 345 U. S. 528, 540 (dissenting opinion). See also Harris v. Balk, 198 U. S. 215; Thompson v. Whitman, 18 Wall. 457; Pennoyer v. Neff, 95 U. S. 714.

By placing the child in the stable environment of permanent adoptive parents the best interests of the child will be served. To delay such placement indefinitely until the father can be located and his paternity established, or to leave the adoption open to contest by the putative father should be subsequently appear would not serve those interests. Where the putative father is only that, and where he has not shown any interest in the child and the state had made every reasonable effort to locate or notify him, and where termination and adoption proceedings would be delayed indefinitely until he could be located (if ever), his rights (if any) become secondary to the welfare of the child. See Orsini v. Blasi, 36 N. Y. 2d 568, 573-74 (370 NYS2d 511, 515-517) for further policy consideration.

We also note that service by publication in termination proceedings was, approved in the majority opinion in Stanley v. Illinois, 405 U. S. 645 (92 SC 1208, 31 LE2d 551). In Footnote 9, the court, in reference to the lack of a hearing for unwed fathers under Illinois' statute for terminating parental rights stated: "Extending opportunity for hearing to unwed fathers who desire and claim competence to care for their children creates no constitutional or procedural obstacle to foreclosing those unwed fathers who are not so inclined. The Illinois law governing procedure in juvenile cases, . . . provides for personal service, notice by certified mail, or *for notice by publication when personal or certified mail service cannot be had or when notice is directed to unknown respondents under the style of 'All whom it may Concern.'* Unwed fathers who do not promptly respond cannot complain if their children are declared wards of the State. Those who do respond retain the burden of proving their fatherhood." (Emphasis supplied.) Stanley v. Illinois, 405 U. S. 645, 657.

In reaching this conclusion, we do not rely on Ga. L. 1971, pp. 709, 747 (Code Ann. § 24A-3202 (b)) which provides that in the case of an illegitimate child, the putative father, whose paternity has not been established and who does not have custody of the child, is not entitled to notice.[2] Since we decide that jurisdiction may be obtained by constructive service of process, which was performed in both cases, sub judice, we need not decide whether jurisdiction over such fathers is unnecessary altogether, as this Code provision indicates.

We hold that the trial court erred in concluding that it did not have jurisdiction over the putative father in each case, because service by publication is statutorily recognized and constitutionally permissible *if* the father's address is unknown and cannot be ascertained with reasonable diligence. The court's erroneous preliminary conclusion that it lacked jurisdiction precluded its further consideration of whether service by publication was permissible under the circumstances of this case. For Code Ann. § 24A-1702 (b) requires a showing by the department that a "reasonable effort" has been made to find the father or ascertain his address. Whether publication notice is permissible here necessarily depends upon an investigation of whether the whereabouts of the fathers of J. B. and A. D. S. were unknown and whether they could be found with reasonable diligence. *Oakley v. Anderson,* 235 Ga. 607 (221 SE2d 31). As a consequence, the factual support necessary to a determination of the appropriateness of notice by publication in these cases is lacking and it cannot be said without further development of the record whether publication was here permissible.

Accordingly, this case is remanded for further factual development of the issue of whether the de-

---

[2] It is interesting to note, however, that, according to a supplemental brief filed by the Attorney General's office, of the 49 state statutes surveyed on the subject of notice requirements to putative fathers of termination proceedings, 33 statutes required no notice and 15 required notice but authorized constructive service.

partment used reasonable diligence in trying to locate the fathers of J. B. and A. D. S. If after consideration of the evidence, the juvenile court determines that the fathers of J. B. and A. D. S. cannot be found with reasonable diligence, it must conclude that service by publication is sufficient to invest it with the jurisdiction to terminate the parental rights of the fathers of J. B. and A. D. S. and thus free the children for adoptive placement pursuant to Code Ann. § 24A-3204 (b).

*Judgment reversed. Quillian, P. J., and McMurray, J., concur.*

ARGUED OCTOBER 12, 1976 — DECIDED NOVEMBER 18, 1976 — REHEARING DENIED DECEMBER 7, 1976 —

*Arthur K. Bolton, Attorney General, Lois F. Oakley, James C. Pratt, Assistant Attorneys General,* for appellant.

*Anne Workman, Solicitor,* for appellees.