(689 P.2d 1203)
No. 55,705

In the Interest of BABY BOY BRYANT, a/k/a ROY BRYANT, a Child Under the Age of 18 Years.

Opinion filed October 18, 1984.

*Gregory C. Nye,* of Nye & Nye, of Newton, for appellant, the natural mother.
*Larry R. Baer,* of Ice, Turner & Ice, of Newton, appellee guardian ad litem.

*Michael E. Cleary,* assistant county attorney, and *Robert T. Stephan,* attorney general, for appellee State of Kansas.

Before BRISCOE, P.J., ABBOTT and SWINEHART, JJ.

ABBOTT, J.: This appeal is by the natural mother of a minor child from an order of the district court severing her parental rights. She raises six issues.

The issue of most concern is what constitutes service of process on and notice to an incapacitated parent in a proceeding seeking severance of parental rights. Although not an issue here, it is reflected in the record before us that the State alleged the father to be unknown; service was ordered and made on the unknown father by publication, yet the mother testified at the hearing as to the father's identity and address. The danger of proceeding against a parent in this manner is readily apparent from reading *In re Woodard,* 231 Kan. 544, 646 P.2d 1105 (1982.)

The mother in this case had been a patient in Topeka State Hospital for approximately 15 years (age 6 to 21) and had no family contact during at least ten years of that time. Her formal education ceased at the second grade.

She apparently continued to have mental problems after her release from Topeka State Hospital, and in April and May of 1981 she was the subject of an involuntary guardianship and conservatorship proceeding. A guardian and conservator was ultimately appointed by the same court that heard this severance action. That it had been found that the mother was in need of a guardian and conservator was drawn to the attention of the trial judge in this case when he allowed the court-appointed attorney for the "unknown" father to withdraw because he had been guardian ad litem for the mother in the guardianship proceeding.

The child who is the subject matter of this severance action was born on December 7, 1981, some seven months after the mother's guardian and conservator was appointed. In response to the deprived child petition, the trial court ordered that the child be placed in the custody of the State Department of Social and Rehabilitation Services (SRS), where he has remained. The mother has had supervised visitation rights, but she has never had custody of the child.

The mother was served with summons. A guardian ad litem was appointed for the child and an *attorney* was appointed to represent the mother.

The petitioner was ordered to give notice by mail to the

mother's guardian/conservator. A subpoena was issued for the guardian/conservator to appear at the hearing to determine whether the child should be adjudicated deprived, but no process was served at any stage of the proceedings.

On April 6, 1982, the State filed a petition to sever parental rights. The guardian/conservator of the mother was not served with process and he received no notice of any kind concerning the severance proceeding. The mother argues that the district court did not have personal jurisdiction over her because her guardian/conservator was not served with process and did not appear at trial.

K.S.A. 38-810a (now K.S.A. 1983 Supp. 38-1534) provides for the method of service of summons, notices and other juvenile code process (now Kansas Code for Care of Children). It does not specifically mention how service is to be effected on an incapacitated person who has a guardian. The State argues that K.S.A. 38-810a(b) (now 1983 Supp. 38-1534) provides for the trial judge to direct the method of service of summons, notice of hearings and other process from among six alternatives, one of which was used in this case (personal service on the mother); that 38-810a(b)(5) provides that when the parent of a child who is the subject of a proceeding is confined in a state hospital or other state institution, service shall be made by restricted mail both to the confined parent and to the person in charge of the institution and thus by inference there is no requirement that the guardian of an incapacitated person be served with summons or other notice.

The State argues that the requirement of notice is fulfilled by complying with the statutory procedures for service of process, and that the juvenile code (Code for Care of Children) is complete in itself. Thus, compliance with the juvenile code is all that is required to obtain jurisdiction over an incompetent parent. In support of this argument, the State also cites K.S.A. 38-820, which stated that the trial court had jurisdiction to enter a child custody determination if "such parent is represented by counsel and present in the district court or has been served with summons." Here, the appellant was represented by court-appointed counsel *and* had been served with summons.

When the juvenile code is silent, one may resort to the code of civil procedure except in situations that are manifestly inappro-

priate. "The juvenile code is to be liberally construed for the protection of its wards and resort to the civil code in matters upon which the juvenile code is silent has frequently been made to carry out its beneficent purposes. See *In re Kerns,* 225 Kan. 746, 594 P.2d 187 (1979)." *In re Shelton,* 8 Kan. App. 2d 226, 230, 654 P.2d 487 (1982).

If one resorts to the civil code, K.S.A. 60-304(c) requires that service of process be made upon an incompetent person by personally serving such person's guardian or conservator or a competent adult member of such person's family with whom the person resides. This statute was not complied with in this case.

The purpose of K.S.A. 60-304(c) is set forth in 1 Gard's Kansas C. Civ. Proc. 2d Annot. § 60-304(c) (1979):

"The former statute was inadequate as it made no provision for service of process on anyone other than the incompetent in the absence of a legal guardian. If there was a legal guardian it was necessary to serve him also. . . . [T]his subsection is designated to more nearly meet the demands of due process.

"The first prerequisite is not by this subsection service on the incompetent, but service on some competent person whose relationship to the incompetent presents an incentive to look after his interests." Comments, p. 12.

It was stated in *Mullane v. Central Hanover Tr. Co.,* 339 U.S. 306, 314, 94 L.Ed. 865, 70 S.Ct. 652 (1950):

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."

We are dealing here with a child who has special needs (physical therapy to overcome mild cerebral palsy) which the mother was incapable of giving. Having spent some 15 years in a state mental hospital (with no parental contact during 10 years of that time), the mother was and may still be incapable of meeting the child's special needs. In fact, it may be that she is incapable of meeting the needs of a normal child. We do not know what help, financial or otherwise, the guardian/conservator was capable of furnishing to his ward. The record indicates the guardian/conservator was not notified that the State contemplated severing the parental rights of his ward, and he may well have been lulled into inactivity knowing that the State first files a deprived child petition and then works with the parent in an effort to correct the deficiency. Having received no notice to the contrary, the guardian might have been lulled into a false sense

that the State was not contemplating severance. Obviously the guardian could have, should have, and indeed might have inquired into the State's intent and what he could do to help. The problem is, the record is silent on the subject.

We believe the problem in this case to be a lack of due process rather than a lack of jurisdiction. An argument can be made that jurisdiction is lacking because K.S.A. 38-802(h) (now K.S.A. 1983 Supp. 38-1502[d]) defines a parent as including a "guardian, conservator and every person who is by law liable to maintain, care for or support a child." At common law a guardian had the duty to maintain and support a ward's infant children. *Matter of Latham,* 4 Ired. Eq. 231, 235; *Ex parte Hastings,* 14 Ves. Ch. 182, 33 Eng. Rep. 490 (1807) (Woerner, Guardianship § 138, p. 455, n. 3. [1897]). That duty extended to illegitimate children. *Ex parte Haycock,* 5 Russ. Ch. *154, 38 Eng. Rep. 985 (1828) (Woerner, p. 456, n. 6). The guardian or conservator of an incapacitated person has a duty to provide for the care, support and maintenance of an illegitimate child of the ward until other arrangements have been made for the child's care, maintenance and support. Thus, it would appear that in the absence of a guardianship and conservatorship for Baby Boy Bryant, the guardian of the baby's mother is a "parent" and service on the incompetent mother's guardian is required by K.S.A. 38-818 (now K.S.A. 1983 Supp. 38-1533).

In any event, we are satisfied that when the State seeks to sever the parental rights of an incompetent parent of an infant, due process requires that service be had on one who is known by the court to be the guardian or conservator of the incompetent parent.

Here, the mother's guardian/conservator had notice of the petition seeking to have the infant declared deprived and did nothing. That, however, is not dispositive, because the State then filed a motion to sever parental rights and the mother's guardian/conservator was *not* served and apparently had no actual notice of the severance proceeding. The State commences many deprived child proceedings and attempts to work with the individuals involved in an effort to restore a functional family unit. Obviously the mother here was in need of the State's help, and that was equally obvious to the guardian/conservator.

The new Code for Care of Children, which was not in effect

when this case was tried, requires that pleadings asserting new or additional claims for relief contrary to the interest of a defaulting party *shall* be served on a defaulting party in the same manner provided in the code for the service of summons. K.S.A. 1983 Supp. 38-1536(d).

Here, the State knew the mother was incapacitated and had a guardian/conservator. A guardian and conservator has control of a ward's assets and, to a large extent, determines how much of a ward's estate can be expended for the care of a ward's child. The child here had special needs which the ward could not meet without help. This does not appear to be a case in which the guardian/conservator had sufficient funds to meet the special needs involved, but we decline to speculate what, if anything, the guardian/conservator could have offered to provide if he had been given an opportunity to appear on the severance issue.

A guardian has the statutory duty and power to assure that the personal, civil and human rights of the ward whom the guardian serves are protected. K.S.A. 59-3018(a). That duty and power would include protecting and aiding the ward in a child severance proceeding brought to sever the ward's parental rights to an illegitimate infant. That duty is so strong that the State specifically prohibits a guardian from consenting on behalf of a ward to the termination of the ward's parental rights. K.S.A. 59-3018(g)(6). The guardian is the only person with the capacity to make or communicate responsible decisions on behalf of the incompetent or to maintain a suit on behalf of the ward.

We note that to appoint a guardian for a disabled person it is necessary, among other things, to give notice of hearings as required by K.S.A. 59-3010 and 59-3011, and those notices *shall* be served on the proposed ward, the attorney for the proposed ward *and* the guardian or conservator of the proposed ward. The significance of this is the State's argument that the juvenile code is complete in itself and cannot be supplemented by the code of civil procedure or other statutory proceedings and that we should affirm since it complied with K.S.A. 38-818, -820 and -824(c). It seems inconsistent to require notice to the guardian or conservator of a proposed ward when the State seeks to have that proposed ward declared disabled, but say the State clearly did not intend that safeguard when it desires to terminate parental rights.

In an action to sever parental rights, our Supreme Court allowed the trial court to order a mental examination of the father pursuant to K.S.A. 60-235. *In re Kerns,* 225 Kan. 746, 751, 594 P.2d 187 (1979).

This court, in *In re Shelton,* 8 Kan. App. 2d at 230, held that:

"The juvenile code is to be liberally construed for the protection of its wards and resort to the civil code in matters upon which the juvenile code is silent has frequently been made to carry out its beneficent purposes."

Our Supreme Court, in a proceeding seeking to sever parental rights, stated:

"While it is true that our juvenile code sets up a complete and exclusive procedure, it is not unreasonable to look to our code of civil procedure and our decisions in other types of civil cases to determine the requirements of valid constructive service. It would seem only logical that due process of law would require at least comparable safeguards in a proceeding in which a parent might lose his or her child as would be required if that same person was a party to an action in which the loss of money or property was at stake. Fundamental fairness, which is the benchmark of due process, requires nothing less." *In re Woodard,* 231 Kan. at 551.

K.S.A. 60-304(c), which requires that the summons and petition shall be served upon an incapacitated person, would require service on the mother's guardian/conservator under the facts of this case. Thus, as the majority of the Supreme Court said, speaking through Justice Holmes in the case of *Woodard,* "Fundamental fairness, which is the benchmark of due process, requires nothing less." We hold, therefore, that the mother has been denied due process of law by reason of the failure to serve her guardian/conservator with notice of the severance proceeding, and reverse and remand with directions to vacate the order severing parental rights.

We make two comments for the benefit of the trial court in the event the State elects to attempt to sever parental rights based on the facts existing at this time.

The trial court correctly determined that parental fitness is affected by the special needs of an emotionally or physically disabled child, and the ability of a parent to meet those needs may be considered by the court in a parental severance case. See *In re Brooks,* 228 Kan. 541, 556-57, 618 P.2d 814 (1980); *In re Penn,* 2 Kan. App. 2d 623, 585 P.2d 1072 (1978).

The trial court correctly decided a parent has no constitutional right, either federal or state, to a jury trial in any action pursuant

to the juvenile code or the new Code for Care of Children. *Findlay v. State*, 235 Kan. 462, 463, 681 P.2d 20 (1984); *In re McCoy*, 184 Kan. 1, 8-9, 334 P.2d 820 (1959).

Reversed and remanded with directions to vacate the order severing parental rights.