[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On June 28, 1991, the State of Kansas by Connecticut counsel initiated a Petition for Habeas Corpus requiring the father Dean Martel bring his daughter Krystal Stutsman to court on July 11, 1991 so that the court might make orders concerning the custody of the daughter. The matter was continued for hearing which concluded on November 13, 1991. Because Krystal was the subject of a Kansas custody order and had resided in Kansas, the action presents two basic issues:
1. Should Connecticut exercise jurisdiction under the provisions of the Uniform Child Custody Jurisdiction Act (UCCJA). Conn. Gen. Stat. Chap. 8150?
2. If yes, should custody be placed in the father?
The court answers "yes" to both questions.
No useful purpose would be served by recounting the pre-petition pleading and procedural history of the situation other than to note a stamped January 16, 1991 ex parte custody and stay order giving temporary custody of Krystal to the father, based on a motion [sic] for custody; the docket sheet and memorandum suggest that the January 16th order merely continued in effect an order issued on August 20, 1990. Section 46b-98. Contact was made with Kansas in connection with those previous Connecticut motions. Section 46b-96. Despite certain advantages of a juvenile matter docketing, a custody habeas writ would be heard on the family relations docket. Sections 46b-1; 46b-121;46b-122. Nevertheless, with the concurrence of all concerned, because subject matter jurisdiction was not involved this court agreed to hear the petition on the merits.
Martel is represented by a private attorney and the daughter and the mother, even though the mother does not appear to be a party, are represented by court appointed attorneys. CT Page 9847 See section 46b-54(b) and Practice Book Section 1045.
 I
Krystal was born on July 20, 1982 in Kansas to Roberta Stutsman as the result of a somewhat relationship with Dean Martel while he had been stationed at Fort Riley in Kansas. The father was not informed of the child's birth or existence by the mother. In response to a December 1989 letter from the Child Support Enforcement Section of the Kansas Department of Social and Rehabilitative Services, the father first learned of a possible paternity. On May 14, 1990 Kansas initiated a Uniform Reciprocal Enforcement of Support (URESA) petition Conn. Gen. Stat. Chap. 816 seeking support, reimbursement and establishment of paternity from Dean Martel whose home address was listed in the petition. In the interim after calling the mother; Dean Martel began to write, phone weekly and send gifts to Krystal culminating in an agreed summer visitation of the child in Connecticut beginning June 16, 1990. Krystal has remained in Connecticut since then.
After investigating a March 1990 neglect referral, the Social Services Section of the Kansas Department of Social and Rehabilitation Services (SRS) on June 22, 1990, requested the County Attorney to file a Child in Need of Care petition (CINC) based on a recital of an extraordinarily dirty home. SRS noted that the agency felt that the mother would not cooperate this second confirmed case because of her 11 year past history and current evasive action, even though the mother and four children at question, including Krystal, had moved to clean quarters; in-home placement was suggested. The mother has had several children, perhaps as many as seven each with a different father. The four child CINC petition was filed on June 28, 1990 without listing any father, although by then SRS knew of Martel as a putative father. On July 5, 1990 Dean Martel acknowledged paternity in the Connecticut court under the URESA petition. On July 10 the mother told SRS social worker that the child was in Connecticut and presumably with the father. The SRS worker phoned Martel about the July 16, 1990 initial hearing. Obviously, the CINC petition was not served on Martel. Kansas Stat. sections 38-1531 — 38-1534. He denies he was told he could attend the hearing.
At the July 16, 1990 Kansas hearing the court was told that Krystal was out of state with Martel. The custody affidavit may not have complied with UCCJA requirements. Without any formal order of notice, the court may have ordered father and child to appear, but, the SRS worker again called Martel; the matter was continued to July 30, 1990. A guardian at litem was appointed for the four children yet no contact by him was CT Page 9848 made with Krystal or Martel.
On July 30, 1990 the Kansas court granted legal custody of all four children to SRS. The custody decree has not been filed in Connecticut, but the failure is insignificant. Section 46b-105.
On October 11, for court review, SRS recommended that custody continue for, among other reasons, mothers failure to undergo a psychological evaluation. By then, charges of nonmaternal sexual abuse of Krystal had been revealed. Exhibit F-8. In fact, the three Kansas children always remained at home. Kansas returned legal custody of the three to their mother on April 1, 1991.
Martel had consulted a Connecticut attorney about the court activities in Kansas. He did not appear in Kansas personally or by attorney. He received no formal notice.
 II
Dean Martel is now married with a daughter born February 9, 1990 and a son born November 7, 1985. He is a member of an extended family which lives in proximity to him and he owns his own home on two acres in Barkhamsted. Krystal has her own room with waterbed, desk, T.V., fish tank, books and toys. Exhibit F-9.
If the child is returned to Kansas, she would be placed in foster care until Kansas resolves custody. Kansas concedes that it is not in best interest to return child to mother at this time. The SRS worker admits Kansas could not now produce as favorable home study as the Connecticut Department of Children and Youth Services. Exhibit F-9. Kansas agrees that if child wants to remain in Connecticut, as she does, and if the therapist agrees, and he does, the better solution is father rather than foster home.
When Krystal arrived in Barkhamsted in early summer 1990 at her father's expense she was a reserved, withdrawn unkempt child. She was unfamiliar with a toothbrush and had never been to a dentist; her cavity was treated in Connecticut. She was examined by a pediatrician and a hearing doctor who found a 95% loss of hearing in one ear. The child reported she had been accidently struck in that ear during a fight between her mother and a neighbor. At the recommendation of the pediatrician, Krystal was evaluated by psychologist Dr. Freedman who recommended the Martels as custodial parents. Exhibit C-2. When allegations of sexual abuse surfaced, the father declined to return Krystal to the mother. Exhibit C-3 and F-13. Even now, it is not clear CT Page 9849 that the mother's then boy friend does not have current access to the home. The mother has not had phone contact from her mother since Thanksgiving, 1990.
Krystal is currently in her second year at the Barkhamsted School. In Kansas Krystal attended special education classes for one half day because she was unmanageable. She yelled, kicked a teacher and threw objects. There has been a dramatic change: Krystal is in full day, regular school classes and her Wexler test now shows her as above average. The school psychologist confers weekly with the child and occasionally with teacher and parents. The focus is on developing teaching strategies to close the gaps in the child's educational background. Exhibit F-10.
Krystal presently is an outgoing, lively talkative child.
The strong opinion of the school psychologist is that Krystal remain with the Martels.
 III
The UCCJA requirements of notice and opportunity to be heard were not met in Kansas. Kansas knew before its decree of Martel's address as a putative father, his present custody of the child and the paternity proceeding. Cf. sections 46b-94, 46b-95. Kansas sections 38-1502; 38-1516, 38-1531; 38-1533. Failure to provide adequate notice and opportunity has constitutional dimensions. Stanley v. Illinois, 405 U.S. 645 (1972). Kansas agrees. Beebe v. Chavey, 226 Kan. 591, 602 P.2d 1279,1286 (1979; In Interest of Woodward, 231 Kan. 544, 646 P.2d 1105
(1982). The Kansas commitment of custody, therefore, is not binding on the father. Section 46b-103.
Although the Kansas custody affidavit, if any, has also been challenged, the court does not consider whether any affidavit error was harmful or can be raised collaterally. Cf. section 46b-99(a) with Kansas section 38-1309(a). Perez v. Perez, 212 Conn. 63, 72-75, 561 A.2d 907 (1989).
Whether the Kansas proceedings were effective against: the father, the same issue of jurisdiction under UCCJA would remain.
The purpose of UCCJA is to avoid jurisdictional competition in matters of child custody. Section 46b-91. Connecticut could exercise jurisdiction if it is the home state of Krystal at time of commencement of the proceeding. Section 46b-93(1)(A). Home state means the state in which the child immediately lived with a parent for at least six consecutive CT Page 9850 months. Section 46b-91(5). Whatever the UCCJA time calculation on the initial Connecticut court activity, this independent habeas corpus petition was commenced on June 28, 1991 when Krystal had been with her father in Connecticut for approximately one year. In addition, it is in the best interest of Krystal that Connecticut assume jurisdiction as the child and the father both have a significant connection with this state and there is available here substantial evidence from among others, school authorities, a psychologist, a psychiatrist, dentist and pediatrician, concerning her present and future care, protection, training and personal relationship. Section 46b-93(2). Whether the sexual abuse allegations are accurate, Krystal believes in the reality and that can be treated here. Connecticut is not an inconvenient forum. Section 46b-97.
The Kansas CINC proceedings were not pending when the habeas was filed. Section 46b-96.
 IV
A habeas corpus action is a proper procedure to determine custody and visitation of a minor child. The paramount issue is the best interest of the child. Nye v. Marcus,198 Conn. 138, 140-141, 502 A.2d 869 (1985); McGaffin v. Roberts,193 Conn. 393, 479 A.2d 176 (1984).
Even if this habeas is considered a request by father that custody be modified, there has been a material change of circumstances and the Kansas custody order, however well motivated, was not based upon the best interests of Krystal. Hall v. Hall, 186 Conn. 118 440 A.2d 839 (1982).
If Kansas had returned custody of Krystal to her mother on April 1, 1991, then this custody dispute would be between mother and father instead of Kansas and father. See the January 16, 1991 affidavit of the mother, as on file. The father is a fit parent and there has been no showing that it would be detrimental to the child to permit the parent father to have custody. The presumption of best interest goes with the father; it has not been rebutted. Section 46b-56b; Perez v. Perez, supra p. 77-80.
Even apart from the presumption, the best interest of Krystal requires that she be allowed to remain in Connecticut under the control of her father.
Nevertheless, the mother should maintain a parental relationship with Krystal. The task is difficult because of distance, finances and maturity. The mother has limited income; she does not have a phone. The father's solution was vague as CT Page 9851 to frequency and duration; the mother was also ambiguous. Hopefully, specifics can be established by the parents. The court suggests that the father consider his extended family for possible lodging of any Kansas visitors, including mother. Any immediate arrangements may be subject to future revision as Krystal becomes more confident, leading possibly to Kansas visits for partial summers and holidays if accomplished without placing Krystal at risk.
If the parties cannot achieve an agreement for the immediate future, the issue is referred to Family Relations for mediation, including teleconferencing, if feasible.
 V
On the day of the hearing, the father filed a motion for counsel fees from the sovereign state of Kansas. Apart from the court's view of the trial and file, the only evidence on fees was the father's testimony that he had incurred expenses of $20,000.00 in this situation, including $14,000.00 as legal. No financial affidavit was filed.
In any proceeding concerning custody, the court may order either parent to pay reasonable attorney's fees of the other parent in accordance with their respective financial abilities and section 46b-82. See Krasnow v. Krasnow, 140 Conn. 254,99 A.2d 104 (1953).
In the absence of a satisfactory evidentiary and legal showing, the motion has been denied.
 VI
Accordingly, it is ordered:
1. Custody of Krystal Stutsman shall be in the father Dean Martel.
2. The Kansas mother Roberta Stutsman shall have reasonable contact and parenting time with the child in Connecticut. To that purpose, the father shall (a) pay annually for one round trip transportation of Krystal's three half siblings, Rachael, Darrell and James, from Kansas to Connecticut and provide suitable lodging during their stay, (b) encourage unlimited mail communication between Krystal and her Kansas relations, including appropriate cards and gifts for holidays and birthdays, (c) permit a weekly phone call at a designated date and time, one call of which limited to 10 minutes shall be at father's expense per month, (d) pay for a 10 minute phone call on Krystal's birthday and Christmas Day, and (e) pay annually CT Page 9852 for 1/2 round trip transportation of the mother from Kansas to Connecticut and assist the mother with locating minimal cost lodging. In the event the mother or siblings are otherwise in Connecticut the father shall provide a reasonable opportunity for contact.
3. Upon expiration of any appeal process, this file is transferred to the adult family relation docket without payment of any filing fee.
SAMUEL S. GOLDSTEIN JUDGE, SUPERIOR COURT