(768 P.2d 316)
No. 61,846

## In the Matter of the Interest of M.L.K.

Opinion filed February 3, 1989.

*Harold T. McCubbin*, of Harold T. McCubbin, Chartered, of Norton, for the appellants.

*Karen L. Griffiths*, of Sebelius & Griffiths, of Norton, and *Daniel C. Walter*, of Ryan, Walter & McClymont, of Norton, for appellees N.K. and T.K.

*Mark C. Whitney*, of Whitney Law Office, of Norton, guardian ad litem.

Before BRISCOE, P.J., ELLIOTT, J., and CARL B. ANDERSON, JR., District Judge, assigned.

ANDERSON, J.: The biological parents of M.L.K., who cannot be located but are represented by counsel, appeal the trial court's decision that it had jurisdiction to terminate their parental rights. In addition, the appointed counsel for the parents appeals the trial court's award of attorney fees based on a rate of $30 per hour. We affirm.

The facts are not in dispute. On September 25, 1982, M.L.K. was born to C.E. and an unknown father, in Boulder, Colorado, with the aid of a midwife. C.E. allowed N.K. and T.K. to take M.L.K. to their home only hours after her birth and, on October 14, 1982, gave them power of attorney for care of M.L.K. At no

time did C.E. either reserve the right or ask to visit M.L.K. However, N.K. did take M.L.K. to visit C.E. on two occasions before she was one year old. N.K. and T.K. have had no contact with C.E. since.

N.K. and T.K. moved from Colorado to Arkansas for about ten days when M.L.K. was about fifteen months old and then moved to Lawrence, Kansas. About one and one-half years later, N.K. and T.K. moved to WaKeeney, Kansas. Two and one-half years later, they moved to Norton, Kansas, where they continue to live today. Except for a month in which N.K. and M.L.K. lived in Texas without T.K., M.L.K. lived with N.K. and T.K. continuously since C.E. first let them have her.

On July 15, 1987, N.K. filed for divorce from T.K. in the District Court of Norton County, Kansas. On September 29, 1987, T.K. filed a petition in that action seeking protective custody under a temporary custody order for M.L.K., as well as the termination of parental rights of the natural parents. The divorce proceedings have since been dismissed by the joint agreement of N.K. and T.K. However, N.K. and T.K. continued to pursue the termination of the parental rights of the natural parents.

A motion for termination of parental rights, pursuant to Chapter 38 of the Kansas Statutes Annotated, was filed by T.K. on October 28, 1987, in Norton County District Court. Counsel was appointed to represent the natural mother, as well as the unknown father. In addition, a guardian ad litem was appointed for M.L.K.

Service of process was attempted by certified mail on C.E. at her last known address; however, this certified letter was returned unclaimed. An affidavit requesting service by publication was filed with the court wherein counsel for T.K. stated that she had made a reasonable but unsuccessful effort to ascertain the address of C.E. and the unknown father of M.L.K. In addition, counsel for C.E. and the unknown father, as well as for T.K., advised the court that they had attempted on several occasions to contact C.E. and find out her present whereabouts but had been unsuccessful. Ultimately, service by publication on C.E. and the unknown father of M.L.K. was duly had on November 17, 1987.

On December 2, 1987, a severance hearing was held. At that hearing the court determined that it had jurisdiction to hear this

matter. On December 10, 1987, a memorandum decision was entered severing the parental rights of C.E. and the unknown father of M.L.K. Still later, on December 28, 1987, the trial court certified an appeal of the case in forma pauperis, and established attorney fees for counsel at a rate of $30 per hour. Counsel for C.E. and the unknown father of M.L.K. has timely appealed.

## Jurisdiction Issue

Must the trial court have personal jurisdiction over the natural mother whose address is unknown and the unknown father of M.L.K. before their parental rights can be terminated? To answer this question, we must examine certain federal, as well as Kansas, court cases.

There can be no question that in recent years, the Supreme Court of the United States, as well as our Supreme Court, has ruled that the rights of a parent in termination and/or custody proceedings warrant protection. *Lassiter v. Department of Social Services*, 452 U.S. 18, 27, 68 L. Ed. 2d 640, 101 S. Ct. 2153 (1981); *In re Cooper*, 230 Kan. 57, 64, 631 P.2d 632 (1981).

The benchmark statement on personal jurisdiction over an out-of-state party was announced in *Internat. Shoe Co. v. Washington*, 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154 (1945). In that case, the Supreme Court held that jurisdiction could be exercised and an in personam judgment obtained against an out-of-state party only if "minimum contacts," with the forum state were established. Absent such "minimum contacts," due process considerations prevented the court from exercising such jurisdiction and entering such in personam judgment.

On first impression, the rules handed down in *Internat. Shoe Co.* would seem to control our case, since the appellees concede that the natural parents of M.L.K. did not have the requisite "minimum contacts" with the State of Kansas that are required in order to obtain jurisdiction under K.S.A. 1988 Supp. 60-308(b), the Kansas long arm statute. However, exceptions to the holdings of *Internat. Shoe Co.* have evolved in other cases over time. In *Shaffer v. Heitner*, 433 U.S. 186, 53 L. Ed. 2d 683, 97 S. Ct. 2569 (1977), the Court expanded the "minimum contacts" rule for jurisdictions to apply to in rem and quasi in rem judgments as well. In addition, the Court carved out an exception to the "minimum contacts" rule. At footnote 30 of the majority opinion, the Court stated:

"We do not suggest that jurisdictional doctrines other than those discussed in text, such as the particularized rules governing adjudication of status, are inconsistent with the standard of fairness." 433 U.S. at 208.

Thus, the Court recognized that status adjudication based on specialized jurisdictional rules meets due process requirements of fairness without the need for "minimal contacts" of the parties with the forum state.

The question in our case then becomes whether termination proceedings filed under the Kansas Code for Care of Children (KCCC), K.S.A. 1988 Supp. 38-1501 *et seq.*, and the Uniform Child Custody Jurisdiction Act (UCCJA), K.S.A. 38-1301 *et seq.*, come under the "status" exception announced in *Shaffer.*

Jurisdiction based on "status" is not a new concept to the State of Kansas. Divorce is probably the most common legal matter handled in Kansas where the court exercises jurisdiction over the marital relationship based on residence of one of the parties within the state and without "minimum contacts" with the State of Kansas by the other party who resides outside the state. Likewise, in child custody and related juvenile cases, jurisdiction based on status has been approved by our Supreme Court as an exception to the "minimum contacts" rule. In *Warwick v. Gluck*, 12 Kan. App. 2d 563, 568, 751 P.2d 1042 (1988), the court held:

"A court must have in personam jurisdiction to enter an order to pay child support. *Kulko v. California Superior Court*, 436 U.S. 84, 56 L. Ed. 2d 132, 98 S. Ct. 1690 (1978). The same is not true of a custody determination made pursuant to the UCCJA. A petitioner need not establish that the nonresident spouse has 'minimum contacts' with the forum state, *Internat. Shoe Co. v. Washington*, 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154 (1945), to bring an action under the UCCJA. 'Rather, custody is in effect an adjudication of a child's status, which falls under the status exception of *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L. Ed. 2d 683 (1977). A court may therefore adjudicate custody under the [UCCJA] without acquiring personal jurisdiction over an absent party given reasonable attempts to furnish notice of the proceedings.' *In re Marriage of Hudson*, 434 N.E.2d 107, 117 (Ind. App. 1982), *cert. denied* 459 U.S. 1202 (1983); see Unif. Child Custody Jurisdiction Act § 12, Commissioners' Note, 9 U.L.A. 149 (1979)."

Is there any reason to view termination cases any differently than divorce or custody cases? We think not. Termination of parental rights is nothing more than a determination of the legal status between the natural parent and the child. To terminate the parental rights of the natural parents to their child is analogous to the court's termination of the marriage relationship between a

husband and wife. In both custody and termination proceedings, the court principally determines where and with whom a child should or should not live. All these proceedings are determinations of status and, as such, are within the "status exception" to the minimum contacts rule announced in *Internat. Shoe Co.* See *Matter of Adoption of J.L.H.*, 737 P.2d 915 (Okla. 1987); Bodenheimer, *Jurisdiction Over Child Custody and Adoption After* Shaffer *and* Kulko, 12 U.C.D. L. Rev. 229 (1979).

In this case, M.L.K. was a resident of the State of Kansas for more than four years prior to the commencement of the termination proceedings. Therefore, it is our determination that the trial court correctly ruled that it had jurisdiction over the termination proceedings filed under the KCCC and/or UCCJA in this case, and that such jurisdiction was not subject to the requirements of the "minimum contacts" rule and K.S.A. 1988 Supp. 60-308(b). To rule otherwise would have the practical effect of forcing M.L.K., as well as literally thousands of other children, to remain in foster care without the possibility of placement, as well as upset innumerable adoptions or potential adoptions. In all such cases, the children's future would always remain insecure.

In so ruling, we are well aware of the potential inequities which could arise as a result of our ruling here today. Certainly, when a child is improperly brought across state lines and the whereabouts of the natural parents are falsely claimed to be unknown, the danger exists that parental rights might be wrongfully terminated. However, that is not the situation in this case, and we have no doubt that should such a situation arise in any future case, the trial court has the necessary equitable powers to deal with the problem. See *Normand by and through Normand v. Ray*, 107 N.M. 346, 758 P.2d 296 (1988).

It should be noted in closing that, even though our ruling does not require personal jurisdiction over a parent who cannot be located or an unknown parent in order to terminate parental rights, due process does require that the absent parent be given notice of termination proceedings and an opportunity to be heard. *In re Woodard*, 231 Kan. 544, 646 P.2d 1105 (1982). However, this is not an issue in this case since all parties admit that the requirements set forth in *Woodard* were met herein.

### Attorney Fees Issue

This issue is controlled by *State ex rel. Stephan v. Smith*, 242 Kan. 336, 383, 747 P.2d 816 (1987), in which the court states:

"The State also has an obligation to pay appointed counsel such sums as will fairly compensate the attorney, not at the top rate an attorney might charge, but at a rate which is not confiscatory, considering overhead and expenses."

In this case, no evidence was presented to the trial court by Mr. McCubbin to establish his overhead or expenses. Therefore, there is no showing on which we can base a finding that the $20 to $30 per hour rate being paid to Mr. McCubbin is confiscatory, nor can this court take judicial notice of Mr. McCubbin's overhead or expenses since these facts are not of common notoriety. See *Dearborn Motors Credit Corporation v. Neel*, 184 Kan. 437, 449, 337 P.2d 992 (1959).

The judgment of the trial court is affirmed.