**S.B., Appellant,**

v.

**STATE of Alaska, DEPARTMENT OF HEALTH & SOCIAL SERVICES, DIVISION OF FAMILY & YOUTH SERVICES, Appellee.**

**No. S–10032.**

Supreme Court of Alaska.

Dec. 27, 2002.

---

25. *Kowalski v. Kowalski,* 806 P.2d 1368, 1373 (Alaska 1991).

26. *Id.*

27. *Id.*

28. *Id.*

29. *Id.*

Roger D. Snippen, Law Offices of Roger D. Snippen, Juneau, for Appellant.

Brad J. Brinkman, Assistant Attorney General, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Janine Reep, Assistant Public Advocate and Guardian Ad Litem, Juneau, and Brant McGee, Public Advocate, Anchorage, for GAL.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

## OPINION

CARPENETI, Justice.

## I. INTRODUCTION

The superior court terminated the parental rights of Sara Blake[1] to her son, Timothy. Blake argues that the superior court lacked both subject matter and personal jurisdiction, and erred in refusing to appoint her new counsel and in denying her request for a continuance. Because the superior court had subject matter jurisdiction under the home state jurisdiction provision of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), we reject Blake's first argument. Because personal jurisdiction is not required for "status" determinations under

---

1. Pseudonyms have been used for all family members involved in this case.

the UCCJEA, we reject Blake's second argument. And because we conclude that her remaining arguments concerning the appointment of new counsel and denial of a continuance are without merit, we affirm the termination of Blake's parental rights.

## II. FACTS AND PROCEEDINGS

Timothy was born to Sara Blake and John Williams[2] in 1991 in California. Blake has an extensive criminal history, including multiple arrests for drug possession and prostitution. Blake has failed to consistently care for any of her five children for a substantial amount of time. During the termination proceeding, Blake admitted that she has "spent fourteen years in prison out of the last seventeen." Blake has had a serious drug problem since the age of fourteen, well over twenty years. In addition, Blake has been investigated on numerous occasions over a period of thirteen years for child abuse and neglect.

At four months of age, Timothy was removed from his mother's care and placed with his paternal grandmother, Laura Iverson. In 1992 the Superior Court of California appointed Laura to be Timothy's guardian and prohibited Blake and Williams from visiting him. Over the next five years, Laura's health declined, and in November 1996 she sent the child to Juneau to live with Lynne Bailey, John's ex-wife and mother of Timothy's two half-siblings. In November 1997 Laura wrote a notarized letter purporting to transfer guardianship to Lynne. Laura died in 1998. Timothy has lived in Alaska with Lynne, her new husband, and his two half-siblings since 1996.

The Alaska Department of Health and Social Services, Division of Family and Youth Services (DFYS), filed a Child in Need of Aid (CINA) petition in October 1999. Superior Court Judge Patricia A. Collins appointed a public defender to represent Blake and appointed a guardian *ad litem* (GAL) for Timothy. The court adjudicated Timothy a child in need of aid in February 2000 under AS 47.10.011 sections (1), (2), (9), and (10),[3] and committed him to the custody of DFYS in April 2000. DFYS filed a petition to terminate Blake's parental rights, and the court did so in January 2001 after conducting a termination trial in November 2000.

Blake now appeals.

## III. STANDARD OF REVIEW

We will overturn a factual finding in a CINA case only if it is clearly erroneous.[4] "A finding is clearly erroneous if it leaves us with a 'definite and firm conviction on the entire record that a mistake has been made.'"[5]

---

2. Timothy's father relinquished his parental rights in April 2000 and he is not a party to this appeal.

3. AS 47.10.011 provides in relevant part:

 [T]he court may find a child to be a child in need of aid if it finds by a preponderance of the evidence that the child has been subjected to any of the following:

 (1) a parent or guardian has abandoned the child as described in AS 47.10.013, and the other parent is absent or has committed conduct or created conditions that cause the child to be a child in need of aid under this chapter;

 (2) a parent, guardian, or custodian is incarcerated, the other parent is absent or has committed conduct or created conditions that cause the child to be a child in need of aid under this chapter, and the incarcerated parent has not made adequate arrangements for the child;

 . . . .

 (9) conduct by or conditions created by the parent, guardian, or custodian have subjected

the child or another child in the same household to neglect;

 (10) the parent, guardian, or custodian's ability to parent has been substantially impaired by the addictive or habitual use of an intoxicant, and the addictive or habitual use of the intoxicant has resulted in a substantial risk of harm to the child; if a court has previously found that a child is a child in need of aid under this paragraph, the resumption of use of an intoxicant by a parent, guardian, or custodian within one year after rehabilitation is prima facie evidence that the ability to parent is substantially impaired and the addictive or habitual use of the intoxicant has resulted in a substantial risk of harm to the child as described in this paragraph[.]

4. *In re S.A.*, 912 P.2d 1235, 1237 (Alaska 1996).

5. *Dunn v. Dunn*, 952 P.2d 268, 270 (Alaska 1998) (quoting *R.F. v. S.S.*, 928 P.2d 1194, 1196 n. 2 (Alaska 1996)).

We review questions regarding both subject matter jurisdiction and personal jurisdiction *de novo*, as "[j]urisdictional issues are questions of law subject to this court's independent judgment." [6] Accordingly, this court's duty is "to adopt the rule of law that is most persuasive in light of precedent, reason, and policy." [7]

Parents have a due process right to effective assistance of counsel in proceedings terminating their parental rights.[8] Whether this due process right, such as the right to effective assistance of counsel, has been violated is a question of law.[9] As we examine questions of law under a *de novo* standard of review, we will "adopt the rule of law that is most persuasive in light of precedent, reason, and policy." [10]

Refusals to grant continuances are reviewed for abuse of discretion.[11] The superior court's refusal to grant a continuance will be upheld unless "after reviewing the whole record, we are left with a definite and firm conviction that the trial court erred." [12]

## IV. DISCUSSION

### A. The Trial Court Had Jurisdiction To Terminate Blake's Parental Rights to Timothy.

#### 1. Subject matter jurisdiction

Blake claims the superior court lacked subject matter jurisdiction to terminate her parental rights to Timothy. Blake concedes that the superior court had temporary emergency jurisdiction over Timothy, but argues that the court wrongfully retained jurisdiction for longer than necessary to ensure his safety. The superior court did not address the question of California's jurisdiction, holding only that "[t]he court has jurisdiction over the parties and the subject matter of the proceeding as the child resided in Alaska for more than six months preceding the initiation of [the] proceedings." [13]

This case requires us to consider the interrelationships of two provisions of the UCCJEA. We must first determine whether the superior court's termination order modified a child custody determination made by the California court, which would require Alaska to have jurisdiction to modify California's determination under AS 25.30.320. If the superior court's termination order did not modify a California child custody determination, we must then determine whether Alaska had jurisdiction to make an initial custody determination under AS 25.30.300.

#### a. The superior court's order did not modify a California child custody determination.

Alaska's jurisdiction to modify the child custody determinations of other states is severely limited by AS 25.30.320.[14] Because

6. *McCaffery v. Green*, 931 P.2d 407, 408 n. 3 (Alaska 1997).

7. *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

8. *V.F. v. State*, 666 P.2d 42, 47–48 (Alaska 1983).

9. *D.M. v. State, Div. of Family & Youth Servs.*, 995 P.2d 205, 207 (Alaska 2000).

10. *Guin v. Ha*, 591 P.2d at 1284 n. 6.

11. *Gregoire v. Nat'l Bank of Alaska*, 413 P.2d 27, 33 (Alaska 1966).

12. *Nelson–Lizardi v. Lizardi*, 49 P.3d 236, 239 (Alaska 2002).

13. By this holding the superior court may have meant to imply that Alaska, as Timothy's home state, had jurisdiction to make an initial custody determination under AS 25.30.300(a)(1). While we agree that Alaska had initial custody jurisdiction, it is necessary first to determine whether California had continuing modification jurisdiction.

14. AS 25.30.320 states:

Except as otherwise provided in AS 25.30.330, a court of this state may not modify a child custody determination made by a court of another state unless a court of this state has jurisdiction to make an initial determination under AS 25.30.300(a)(1), (2), or (3) and

(1) the court of the other state determines it no longer has exclusive, continuing jurisdiction under provisions substantially similar to AS 25.30.310 or that a court of this state would be a more convenient forum under provisions substantially similar to AS 25.30.360; or

(2) a court of this state or a court of the other state determines that neither the child, nor a parent, nor a person acting as a parent presently resides in the other state.

that statute applies only to the modification of child custody determinations, we must decide whether the California order constituted a "child custody determination." Alaska Statute 25.30.909(3) defines that term as:

> a judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child, including a permanent, temporary, initial, and modification order, except that the term does not include an order relating to child support or other monetary obligation of an individual. . . .

■ If the death of Timothy's guardian terminated California's guardianship order, California's original guardianship determination is not an existing, ongoing "child custody determination" capable of modification, and Alaska's jurisdiction is not limited by AS 25.30.320. We look to California law to determine whether the California order survived the death of Timothy's guardian. Section 2630 of the California Probate Code provides that the relationship of guardian and ward is terminated by the death of either, but that the California court retains jurisdiction following such death "for the purpose of settling the accounts of the guardian or conservator or for any other purpose incident to the enforcement of the judgments and orders of the court upon such accounts or upon the termination of the relationship."[15] But any order incident to the wrapping up of the accounts of the guardian under Section 2630 of the California Probate Code would not be an order providing for the legal or physical custody of the child or visitation, and thus could not constitute a "child custody determination" under AS 25.30.320. Accordingly, we conclude that with the death

of the guardian there was no existing child custody determination.

Alternatively, California might have resuscitated its earlier child custody order by using its power to appoint a new guardian. Construing the predecessor statute to section 2630, a California court in *In re Estate of Mims*[16] held that while the death of a guardian automatically revokes that guardian's appointment, the court may appoint a new guardian without specifically terminating the first guardianship.[17] But *In re Estate of Mims* limited this holding by stating that the guardianship "continues, but a new guardian must be appointed."[18] As previously described, the Superior Court of California appointed Laura Iverson as Timothy's guardian in 1992, and she died in April 1998. The order contains no provision covering this situation, and California did not act to appoint a new guardian. Because California did not appoint a new guardian, its "child custody determination" ended with the death of Timothy's guardian.

Finally, it might be argued that the California court's no-contact order constituted a "child custody determination." We reject that argument, because AS 25.30.909(3), in defining the phrase, specifies only affirmative custodial orders, rather than orders merely precluding contact.

California law also supports the conclusion that California did not possess modification jurisdiction under its Uniform Child Custody Jurisdiction Act (UCCJA), which is applicable because it was in effect as of October 1999,[19] when this suit was filed.[20] California's UCCJA[21] provided that California had

---

15. Cal Prob Code § 2630 (West 2002).

16. 202 Cal.App.2d 332, 20 Cal.Rptr. 667 (1962).

17. *Id.* at 671.

18. *Id.*

19. California adopted the UCCJEA, replacing the UCCJA, effective January 1, 2000. Uniform Child Custody Jurisdiction and Enforcement Act, Stats.1999, ch. 867 (S.B.1999) (codified as amended at Cal. Fam.Code § 3400); *In re Nada R.*, 89 Cal.App.4th 1166, 108 Cal.Rptr.2d 493, 499 (2001) (explaining that "California adopted

the UCCJEA, formerly UCCJA, in January of 2000").

20. DFYS filed and served Timothy's father with a child in need of aid petition on October 1, 1999 and amended the petition to include Blake on October 14, 1999.

21. Cal. Fam.Code § 3403 (repealed 1999) (formerly Cal. Civ.Code § 5152) read in relevant part:
(a) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if the conditions as set forth in any of the following paragraphs are met:

neither initial nor modification jurisdiction if it was no longer the home state of the child and no longer had a significant connection to the child.[22] In determining its home state jurisdiction, California looks to "where the children live, where the most evidence of their daily living conditions will be found, where the continuity and stability of their parental relationship and their daily routines will be least disrupted by the legal procedure. . . . [¶] The children's home is the presumptively correct forum."[23] Under this test, it is clear that California did not maintain home state jurisdiction because Timothy had been living in Alaska for almost three years, all evidence of his daily living conditions was in Alaska, and his daily routine and stability could only be maintained in Alaska. Likewise, California no longer possessed significant connection jurisdiction under California's best interest of the child test, which does not allow jurisdiction " 'unless it is demonstrated [that] the child · and at least one

> (1) This state (A) is the home state of the child at the time of commencement of the proceeding, or (B) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state.
>
> (2) It is the best interest of the child that a court of this state assume jurisdiction because (A) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (B) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships.

**22.** *In re Marriage of Steiner*, 89 Cal.App.3d 363, 152 Cal.Rptr. 612, 617 (1979) (applying California Civil Code section 5152(1)(a)-(b) to deny California's jurisdiction to modify Colorado's modification of a California child custody determination).

**23.** *In re Marriage of Newsome*, 68 Cal.App.4th 949, 80 Cal.Rptr.2d 555, 560 (1998) (quoting *Hafer v. Superior Court*, 126 Cal.App.3d 856, 179 Cal.Rptr. 132, 137 (1981) (in which the court applied California Civil Code section 5152 to determine that neither initial home state nor significant connection jurisdiction existed in California where the mother and children had lived in Texas for the three years prior to the commencement of the child custody proceeding)).

**24.** *Id.* at 561 (quoting *Plas v. Superior Court*, 155 Cal.App.3d 1008, 202 Cal.Rptr. 490, 494 (1984)).

parent have a significant connection with [California] and that there is available in California substantial evidence concerning the child's care and relationships with others.' "[24] Because Timothy has had virtually no connection with California, that state did not possess significant connection jurisdiction to modify its initial child custody determination. As a result, California no longer had modification jurisdiction under its UCCJA, and there was no ongoing child custody determination that would restrict Alaska's exercise of jurisdiction by limiting it to the narrow modification jurisdiction of AS 25.30.320.

### b. Alaska properly exercised initial child custody jurisdiction as Timothy's home state.

We turn next to the question whether Alaska properly exercised initial child custody jurisdiction. Alaska Statute 25.30.300(a)[25] sets out the circumstances

**25.** AS 25.30.300(a) states:·

> Except as otherwise provided in AS 25.30.330, a court of this state has jurisdiction to make an initial child custody determination only if
>
> (1) this state is the home state of the child on the date of the commencement of the proceeding;
>
> (2) this state was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;
>
> (3) a court of another state does not have jurisdiction under provisions substantially similar to (1) or (2) of this subsection, or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under provisions substantially similar to AS 25.30.360 or 25.30.370, and
>
> (A) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and
>
> (B) substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;
>
> (4) all courts having jurisdiction under the criteria specified in (1)-(3) of this subsection have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under provisions substantially similar to AS 25.30.360 or 25.30.370; or
>
> (5) no court of another state would have jurisdiction under the criteria specified in (1)-(4) of this subsection.

under which a court of this state has jurisdiction to make an initial child custody determination. The superior court asserted jurisdiction under subsection (1): "if . . . this state is the home state of the child on the date of the commencement of the proceedings." That decision was correct if Alaska was Timothy's home state when this proceeding was commenced in October 1999. Accordingly, we must determine whether Alaska meets the definition of a home state under AS 25.30.909(7).[26]

■ For purposes of this discussion, the statute contains two requirements: that the child have been present in this state for at least six consecutive months before the commencement of the action, and that the child have been here with a parent "or [a] person acting as a parent." Timothy was here for almost three years before the action was filed, so the only question is whether Lynne Bailey was a "person acting as a parent." To answer that question, we must look to the definition of that phrase under AS 25.30.909(13).[27]

That statute too contains two requirements that are relevant to this case: that the person have had "physical custody" of the child for at least six consecutive months before the commencement of the action and that the person claim a right to "legal custody" under the laws of this state. "Physical custody" is defined in AS 25.30.909(14) as "the physical care and supervision of a child." We believe that physical custody as used in AS 25.30.909(13), therefore, refers to *de facto*, as distinct from legally awarded or *de jure*, authority for the physical care and supervision of a child. By contrast, "legal custody" in the statute refers to legally awarded, or *de jure*, authority for some aspect of the child's care.

Using these terms as so understood, Bailey has had physical custody over Timothy since November 1996, almost three consecutive years before the commencement of this proceeding. Thus the only remaining question is whether she claims a right to legal custody under the laws of this state.

Literally, Bailey has made such a claim since she seeks to adopt Timothy. But we think that the statute also requires that a claim of a right to legal custody be at least legally plausible. That is the case here, for Alaska recognizes the rights of nonparents to exercise legal custody of children over the competing claims of parents when the welfare of the child so requires, upon a showing that "it clearly would be detrimental to the child to permit the parent to have custody."[28] That standard is at least plausibly satisfied under the facts of this case given Blake's personal circumstances, the fact that Timothy has not lived with her since infancy, and the fact that Bailey had been exercising physical custody of Timothy for almost three years before the present action was filed.

In consideration of the foregoing, we conclude that Lynne Bailey has physical custody of Timothy and claims a right to his legal custody in the sense meant by the statute. She thus qualifies as a "person acting as a parent" under AS 25.30.909(13).

It follows that the superior court had subject matter jurisdiction to adjudicate the state's petition to terminate Blake's parental rights under AS 25.30.300(a)(1). Finally, since California no longer had jurisdiction and Alaska did have jurisdiction, the exercise of jurisdiction by the superior court was

**26.** AS 25.30.909(7) defines "home state" as:

[t]he state in which a child lived with a parent or a person acting as a parent for at least six consecutive months, including any temporary absences of the child or parent or person acting as a parent, immediately before the commencement of a child custody proceeding, except that, in the case of a child who is less than six months of age, the term means the state in which the child lived from birth with any of the persons mentioned, including any temporary absences.

**27.** AS 25.30.909(13) states that "person acting as a parent" means a person, other than a parent, who

(A) has physical custody of a child or has had physical custody for a period of six consecutive months, including temporary absence, within one year immediately before the commencement of a child custody proceeding; and

(B) has been awarded legal custody by a court or claims a right to legal custody under the law of this state[.]

**28.** *Turner v. Pannick*, 540 P.2d 1051, 1054 (Alaska 1975).

proper under the Parental Kidnaping Prevention Act.[29]

## 2. Personal jurisdiction

 Blake also argues that the superior court lacked jurisdiction over her personally because she had no contacts with Alaska, much less "minimum contacts." DFYS argues that under Alaska Civil Rule 12(h) Blake waived any objection regarding the lack of personal jurisdiction by failing to raise this issue as required by Civil Rule 12(b).[30] But Blake stated at a December 1999 status conference that "I don't even think Alaska has jurisdiction because [indiscernible] California does." She also stated at the April 2000 CINA disposition hearing that Timothy should not be in the custody of the state of Alaska because "[h]e has no family ties up there" and that she was his parent and she was in California. We conclude that these assertions were sufficient to raise the issue.

 As a general rule, a forum may not exercise jurisdiction over a non-consenting party consistent with the requirements of due process unless that party has certain "minimum contacts" with the forum state.[31]

This usually means that the party must "purposefully avail[] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." [32] There is no question that Blake has not purposefully availed herself of the benefits of Alaska's laws. But because this case falls under an exception to the general rule, Alaska's power to terminate her parental rights does not depend upon her contacts with Alaska at all, but on Alaska's contacts with her child, Timothy.

In *Shaffer v. Heitner*,[33] the United States Supreme Court expanded the minimum contacts rule to cover almost all cases, whether labeled *in rem*, quasi *in rem*, or *in personam*.[34] But the Court recognized that this single standard could not "accommodate some necessary litigation," [35] and recognized that certain jurisdictional rules, "such as the particularized rules governing adjudication of status," are not "inconsistent with the standard of fairness." [36] The majority of courts that have addressed the issue have held that child custody proceedings conducted under the jurisdictional rules of the UCCJA fit within *Shaffer's* "status" exception, meaning that personal jurisdiction over non-consenting parties is not required.[37] Likewise, nu-

**29.** 28 U.S.C. § 1738A states in pertinent part:
(a) The appropriate authorities of every State shall enforce according to its terms, and shall not modify except as provided in subsections (f), (g), and (h) of this section, any custody determination or visitation determination made consistently with the provisions of this section by a court of another State.

. . . .

(f) A court of a State may modify a determination of the custody of the same child made by a court of another State, if—
(1) it has jurisdiction to make such a child custody determination; and
(2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.
(g) A court of a State shall not exercise jurisdiction in any proceeding for a custody or visitation determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody or visitation determination.
(h) A court of a State may not modify a visitation determination made by a court of another State unless the court of the other State no longer has jurisdiction to modify such

determination or has declined to exercise jurisdiction to modify such determination.

**30.** *Morrow v. New Moon Homes, Inc.*, 548 P.2d 279, 294 (Alaska 1976) (stating that defense of lack of personal jurisdiction must be pleaded on answer or by motion or be waived).

**31.** *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

**32.** *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

**33.** 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977).

**34.** *Id.* at 212, 97 S.Ct. 2569.

**35.** *Id.* at 201, 97 S.Ct. 2569.

**36.** *Id.* at 208 n. 30, 97 S.Ct. 2569.

**37.** *Balestrieri v. Maliska*, 622 So.2d 561, 562–64 (Fla. 4th DCA 1993) (collecting cases sustaining status adjudications in the absence of personal jurisdiction); David J. Benson, *Can a Case Be Made for the Use of the Uniform Child Custody*

merous courts that have considered whether termination proceedings fit within the "status" exception have held that they do.[38] The reasoning of both sets of cases is persuasive, and both apply here.[39] Accordingly, we hold that Blake's due process rights were not violated by the superior court's assertion of jurisdiction over her in spite of her lack of contacts with Alaska.

## B. The Superior Court Did Not Err in Refusing To Appoint New Counsel.

The superior court appointed a public defender to represent Blake at the first hearing in this case. At nearly every subsequent hearing Blake complained that the public defender was ineffective and asked the court to appoint substitute counsel or to allow her to represent herself. The superior court allowed her to represent herself *pro se* from the February 2000 adjudication forward. The court construed her complaints as ineffective assistance claims and rejected them on at least three occasions, refusing to appoint new counsel. After determining that Blake was competent to represent herself, the court asked the public defender to continue to participate in the proceedings as "advisory counsel."

Blake argues that the trial court erred in failing to appoint substitute counsel. She argues that the public defender did not raise the jurisdictional issues discussed above, did not assist her in subpoenaing witnesses, and did not communicate with her generally.

First, we recognize the general rule that *pro se* defendants may not raise ineffective assistance claims against advisory counsel.[40] The only exception to this rule occurs when the advisory counsel oversteps his limited role and assumes a degree of control consistent with legal representation.[41] But Blake's complaint is that the public defender did too little, not too much. Thus, from the moment she decided to represent herself she lost the right to claim that any subsequent acts of advisory counsel constituted ineffective assistance.

As to the public defender's decisions prior to his dismissal by Blake, we conclude that they did not fall below the "'range of reasonable actions which might have been taken by an attorney skilled in the ... law.'"[42] Blake claims that the public defender failed to prepare subpoenas for reluctant witnesses, but at trial Blake admitted that she had not given her witness list to the public defender because she did not trust him. The public defender stated that she eventually gave him a list of witnesses, but they were all already scheduled to be called by the state.

Blake further claims that the public defender did not return her calls or make sufficient attempts to communicate with her, but the public defender related the contents of several conversations he had with her. The trial court was in the best position to evaluate these fact-intensive claims, and its conclusions appear to be reasonable. We find no error here.

*Jurisdiction Act in Child Support Determinations?*, 26 GONZ. L.REV. 125, 134 n. 6 (1990) (collecting cases). We noted this trend in *McCaffery v. Green*, 931 P.2d 407, 413 n. 14 (Alaska 1997), but did not need to reach the issue.

38. *In re Appeal in Maricopa County*, 25 Ariz.App. 333, 543 P.2d 454, 459 (1975); *In re M.L.K.*, 13 Kan.App.2d 251, 768 P.2d 316, 319 (1989); *Wenz v. Schwartze*, 183 Mont. 166, 598 P.2d 1086, 1092 (1979); *In re Adoption of Copeland*, 43 S.W.3d 483, 487 (Tenn.App.2000); *White v. Blake*, 859 S.W.2d 551, 564 (Tex.App.1993); *In re M.S.B.*, 611 S.W.2d 704, 706 (Tex.Civ.App. 1980).

39. The UCCJEA, which replaced the UCCJA in Alaska in 1999, governs Alaska's assumption of jurisdiction in all child custody determinations,

AS 25.30.300(a) & .330(a) (providing exclusive bases for assertion of subject matter jurisdiction to make initial custody determination), and defines "child custody proceeding" to include CINA and termination of parental rights proceedings. AS 25.30.909(4). *See also E.H. v. State, Dep't of Health & Soc. Servs.*, 23 P.3d 1186, 1191 (Alaska 2001).

40. *E.g., Downey v. People*, 25 P.3d 1200, 1203 (Colo.2001) (collecting cases).

41. *Id.* at 1204 (collecting cases).

42. *P.M. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 42 P.3d 1127, 1131 (Alaska 2002) (alterations in original); *see also Risher v. State*, 523 P.2d 421, 424 (Alaska 1974).

Finally, the public defender's failure to raise the jurisdictional issues now argued on appeal is likewise insufficient for an ineffective assistance claim. As we stated in *Risher*, "[l]awyers may display a wide spectrum of ability and still have their performance fall within the range of competence displayed by one of ordinary training and skill."[43] While we doubt that this standard was breached here, we need not decide the issue, for *Risher's* second requirement for an ineffective assistance claim is a showing that "the lack of competency contributed" to the adverse result.[44] Blake admits that "it is highly unlikely the end result for [Blake] would have been different under California law" had the court ruled that Alaska lacked subject matter jurisdiction to terminate her parental rights. Thus, Blake surrendered the second prong of her ineffective assistance claim, and cannot prevail upon it. Accordingly, the trial court did not err in declining to appoint new counsel for Blake.

### C. The Superior Court Did Not Abuse Its Discretion by Failing To Grant Blake's Requests for Continuances.

 Following the trial court's suggestion, Blake requested a continuance at the outset of the February 2000 CINA adjudication trial to give herself more time to locate witnesses. The state requested that it go forward with testimony from three witnesses already scheduled to participate that day. The trial court granted this request, and decided to hold the continuance issue in abeyance over the weekend, stating that it would resume consideration of the issue if Blake was unable to locate her witnesses in that time. Blake did not renew her continuance request the next week. She now argues it was error not to grant her initial request, but does not explain why she failed to renew her request as suggested by the court. The actions undertaken by the superior court were not an abuse of discretion.

 Blake also requested a continuance at a November 3, 2000 status conference, three days before the termination trial was scheduled to begin. Blake explained that she "just got out of prison. I had to go for a dryout that was unexpected." As a result, she had not had time to prepare for trial. The trial court explained that the termination trial had been "calendered for months," and refused the request. Again, Blake does not explain how the court erred in denying her request. As DFYS explains, all CINA cases are extremely time-sensitive, and Blake offers no reason why her lack of preparation required the court to take the extraordinary measure of rescheduling a trial less than three days before it was set to begin. We hold that the superior court did not err in failing to grant Blake's continuances.

## V. CONCLUSION

We hold that the superior court had jurisdiction over the termination proceedings, that Blake's claim for ineffective assistance of counsel has no merit, and that the superior court did not err in refusing to grant Blake's continuances. Accordingly, we AFFIRM the decision of the superior court in its entirety.

EASTAUGH, Justice, concurring.

I concur in the result the court reaches and the reasoning it employs, because appellant has not demonstrated the existence of any California decree which satisfies the definition of "child custody determination" contained in AS 25.30.909(3). The order appointing Laura Iverson as Timothy's guardian did not otherwise award legal or physical custody of the child to any other person or entity, or create in the abstract a guardianship that would survive the death of the guardian. It is therefore correct to conclude that Laura Iverson's death terminated the order that made her Timothy's guardian, the only order which appellant has brought to our attention in arguing that Alaska has no jurisdiction.

---

43. *Risher,* 523 P.2d at 424.

44. *Id.* at 425.