NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| JULIA D., ) | |
| ) | Supreme Court No. S-14797 |
| Appellant, ) | |
| ) | Superior Court No. 3PA-09-00076 CN |
| v. ) | |
| ) | MEMORANDUM OPINION |
| STATE OF ALASKA, DEPARTMENT ) | AND JUDGMENT[*] |
| OF HEALTH & SOCIAL SERVICES, ) | |
| OFFICE OF CHILDREN'S SERVICES, ) | No. 1467 – September 18, 2013 |
| ) | |
| Appellee. ) | |
| ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Eric Smith, Judge.

Appearances: Deborah K. Burlinski, Anchorage, for Appellant. Megan R. Webb, Assistant Attorney General, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices. Bolger, Justice, concurring.

## I.      FACTS AND PROCEEDINGS

The State of Alaska, Department of Health and Social Services, Office of Children's Services (OCS) took Julia D.'s son, Jackson,[1] who was born in 2007, into emergency custody in August 2009 after Julia was involved in multiple incidents of

---

[*]      Entered under Alaska Appellate Rule 214.

[1]      Pseudonyms are used throughout to protect the privacy of the parties.

domestic violence, sometimes as a victim and other times as a perpetrator.[2] Julia also had a long history of abusing substances, including alcohol, marijuana, cocaine, prescription pain pills, methamphetamine, and heroin. OCS referred Julia for mental health counseling, a psychological evaluation, and substance abuse treatment.

In September 2010, because Julia had left her abusive boyfriend and had made progress in addressing her substance abuse issues, OCS placed Jackson with her for a trial home visit. The visit ended four months later after Jackson was severely beaten while being cared for by Julia's new boyfriend. OCS removed Jackson from Julia's care, placed him with an experienced licensed foster parent, and provided him therapy.

OCS referred Julia for another psychological evaluation, which recommended that she complete a long-term residential treatment program of dual-diagnosis, wrap-around services to address her substance abuse and dependent personality traits. OCS also facilitated visits between Julia and Jackson. Julia did not participate in the recommended treatment program and did not communicate effectively with OCS. She did participate in less-intensive substance abuse treatment programs, but without any lasting success. She continued to abuse substances, and by July 2011 was using heroin daily.

As of July 2011, in addition to the recommended treatment program, Julia's case plan called for her to participate in a hair follicle drug screen, urinalysis tests, a substance abuse assessment, a mental health assessment, and domestic violence education. Her social worker testified that Julia did not participate in the recommended treatment program or the drug screen, participated in urinalysis screenings "off-and-on

---

[2]    Julia left Jackson's father in 2008. The father was involved minimally, if at all, in providing care for Jackson after that time.

throughout this case — mostly off," and participated in domestic violence education randomly and haphazardly. The social worker had difficulty contacting Julia, who seldom answered the worker's calls.

In August 2011 OCS filed a petition to terminate Julia's parental rights to Jackson. In February 2012 the trial court held a one-day termination trial, following which it terminated Julia's parental rights. Julia appeals, arguing that: (1) the trial court erred by not addressing whether the Indian Child Welfare Act[3] (ICWA) applies to this case; (2) termination of Julia's parental rights was improper because she had remedied the conduct that endangered Jackson; (3) OCS did not make reasonable efforts to provide her with reunification services; and (4) Julia's trial attorney provided her with ineffective assistance of counsel.

We reject each of Julia's arguments and affirm the trial court order terminating her parental rights to Jackson.

## II. STANDARD OF REVIEW

In child in need of aid cases, we review the trial court's factual findings for clear error and its legal determinations de novo.[4] Factual findings are clearly erroneous if, after reviewing the record in the light most favorable to the prevailing party, we are left with a definite and firm conviction that the trial court's decision was mistaken.[5] Conflicting evidence is generally not sufficient to overturn the trial court's factual findings, and we will not reweigh evidence when the record provides clear support for

---

[3]     25 U.S.C. § 1901-1963 (2006).

[4]     *Sherman B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 290 P.3d 421, 427-28 (Alaska 2012) (citing *Christina J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 254 P.3d 1095, 1103-04 (Alaska 2011)).

[5]     *Id.* (quoting *Barbara P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 234 P.3d 1245, 1253 (Alaska 2010)).

the trial court's ruling.[6]

Determining whether the trial court's findings comport with ICWA's requirements is a question of law.[7] Whether a child is in need of aid and whether the parent failed to remedy conduct or conditions placing a child at risk are factual determinations.[8] Whether OCS made reasonable efforts to provide services to reunify the family is a mixed question of fact and law.[9] Whether a parent received ineffective assistance of counsel in a parental rights termination proceeding is a question of law.[10]

## III. DISCUSSION

### A. The Trial Court Did Not Err By Stating That ICWA Does Not Apply To This Case.

When Jackson came into OCS's custody in August 2009 and was found to be a child in need of aid, no one asserted that Jackson was an Indian child for ICWA purposes, no evidence was presented on the point, and the trial court explicitly found that Jackson was not an Indian child. This finding was echoed in statements in predisposition reports prepared by OCS and by Jackson's guardian ad litem (GAL) in November 2009, in a permanency report prepared by the GAL in August 2010, in OCS's petition to

---

[6] *Id.* at 428 (quoting *Maisy W. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 175 P.3d 1263, 1267 (Alaska 2008)).

[7] *L.G. v. State, Dep't of Health & Soc. Servs.*, 14 P.3d 946, 950 (Alaska 2000) (citing *E.M. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 959 P.2d 766, 768 (Alaska 1998)).

[8] *Sherman B.*, 290 P.3d at 428 (quoting *Pravat P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 249 P.3d 264, 270 (Alaska 2011)).

[9] *Id.* (citing *Christina J.*, 254 P.3d at 1104).

[10] *Stanley B. v. State, DFYS*, 93 P.3d 403, 408-09 (Alaska 2004) (citing *S.B. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 61 P.3d 6, 10 (Alaska 2002)).

terminate Julia's parental rights filed in August 2011, and in the trial court's order terminating Julia's parental rights issued in June 2012.

Julia points to a single statement the GAL made in a permanency report prepared in April 2011 to argue that the trial court erred in not addressing in its termination order whether ICWA applies to this proceeding.[11] The statement reads:

> This case is not currently an Indian Child Welfare Act (ICWA) case. [Father] has maintained since the case started that he is of Alaska Native heritage, but has yet to produce documentation that he or his son are eligible for enrollment in an Alaska Native Tribe. At the 2/28/11 Permanency Planning Conference/Administrative Review, [Father] again stated his intention of providing documentation, looking into the enrollment criteria for Knik Tribe, but is unsure at this time if his Alaska Native heritage comes from the maternal or paternal side of the family.

Our caselaw holds that a parent has the "burden to produce the necessary evidence to establish that [a child] was a member of or eligible for membership in [a] Tribe,"[12] and we have observed that "[o]ther courts have held that if the requisite party does not come forward with evidence that ICWA applies, it is not error to ignore

---

[11]    The trial court's order terminating Julia's parental rights contains a finding, without elaboration, that Jackson "is not an Indian child as defined in 25 U.S.C. § 1903(4)."

[12]    *Bruce L. v. W.E.*, 247 P.3d 966, 977 (Alaska 2011) (citing *In re Baby Boy Doe*, 849 P.2d 925, 931 (Idaho 1993); *In re M.N.W.*, 577 N.W.2d 874, 876 (Iowa App. 1998); *In re C.P.*, 641 S.E.2d 13, 16 (N.C. App. 2007); *In re A.L.*, 623 N.W.2d 418, 420 (N.D. 2001); *Hofmann v. Anderson*, 31 P.3d 510, 512 (Or. App. 2001); *People ex rel. D.T.*, 667 N.W.2d 694, 699 (S.D. 2003); CONFERENCE OF WESTERN ATTORNEYS GENERAL, AMERICAN INDIAN LAW DESKBOOK 580 (4th ed. 2008)).

ICWA's mandates."[13] Julia presented no evidence or argument to the trial court that ICWA should apply to these proceedings, and she has made no offer of proof regarding this matter to us. Under these circumstances we find no error in the trial court's finding that Jackson was not an Indian child and, thus, that ICWA does not apply to this case.

**B. The Trial Court Did Not Err In Finding That Jackson Had Been Exposed To Conduct Or Conditions Specified In AS 47.10.011 And That Julia Did Not Remedy Conduct That Endangered Jackson.**

Alaska Statute 47.10.088(a)(1) requires a trial court to find, by clear and convincing evidence, that a child has been subjected to conduct or conditions described in AS 47.10.011 before terminating parental rights. Alaska Statute 47.10.088(a)(2) requires a trial court to find, by clear and convincing evidence, that a parent has failed to timely remedy conduct or conditions endangering the child before terminating parental rights. The trial court found OCS presented clear and convincing evidence that Jackson had been exposed to conduct or conditions listed in several subsections of AS 47.10.011, including subsection (10),[14] and that Julia had failed to remedy conduct or conditions, including her habitual or addictive abuse of substances, placing Jackson at risk of harm.

Julia appears to deny that her substance abuse had placed Jackson at risk of harm. She also argues that "[e]ven if it could be determined that [she] had a history of substance abuse," because she was sober during parts of 2011, "[t]he evidence . . . shows that [she] can and has controlled substance abuse issues and the court's findings

---

[13] *Id.* (citing *In re C.K.*, 221 S.W.3d 467, 470 (Mo. App. 2007); *In re C.P.*, 641 S.E.2d at 16-17; *In re A.L.*, 623 N.W.2d at 422; *Hofmann*, 31 P.3d at 511-12; *People ex rel. D.T.*, 667 N.W.2d at 699).

[14] AS 47.10.011(10) provides, in relevant part, that a child may be found to be in need of aid if the child's "parent, guardian, or custodian's ability to parent has been substantially impaired by the addictive or habitual use of an intoxicant, and the addictive or habitual use of the intoxicant has resulted in a substantial risk of harm to the child."

that she has not done so are erroneous." But Julia does not dispute that, at least early in the case, her conduct exposed Jackson to drug addicts, drug dealers, and repeated incidents of domestic violence. Nor does her claim that she was able to demonstrate periods of sobriety refute the fact that a child in her care would have been endangered by her continued, if sporadic, use of drugs, including heroin, throughout 2011, and by her refusal to fulfill her case plan requirements, including participation in the dual-diagnosis treatment program OCS required.

We find no error in the trial court's findings, by clear and convincing evidence, that Julia's substance abuse caused Jackson to be a child in need of aid and that Julia did not remedy her conduct in time for Jackson to be safely returned to her custody.[15]

## C. The Trial Court Did Not Err In Finding That OCS Provided Julia With Reasonable Efforts To Reunify Her Family.

Alaska Statutes 47.10.086(a) and 47.10.088(a)(3) require a trial court to find, by clear and convincing evidence, that OCS made timely, reasonable efforts to provide family support services designed to enable the child's safe return to the family home before terminating parental rights. Under these statutes OCS must identify services to help the parent remedy conduct or conditions endangering the child "in a manner that allows the parent to utilize the services."[16] In evaluating OCS's efforts, the

---

[15] *See* AS 47.10.011(10); AS 47.10.088(a)(2). Because we affirm the trial court's findings on the basis of Julia's substance abuse, we do not need to reach Julia's challenges to the court's findings under AS 47.10.011(6) (physical harm or risk of physical harm), (8) (mental injury or risk of mental injury), and (11) (parent's mental or emotional condition). *See Barbara P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 234 P.3d 1245, 1254 n.17 (Alaska 2010).

[16] *Frank E. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 77 P.3d 715, 720 (Alaska 2003); AS 47.10.086(a).

trial court should consider all of the services OCS provided over the course of its involvement with the family, and it should also consider services provided to an incarcerated parent by the Department of Corrections.[17] OCS's efforts do not need to be perfect but must be reasonable for the particular case.[18] A parent's demonstrated lack of willingness to participate in services may be considered in determining whether OCS's efforts were reasonable.[19]

The trial court found that OCS provided Julia with reasonable reunification efforts, including developing case plans addressing her substance abuse, parenting capacity, and mental health issues; referring Julia for substance abuse assessments, substance abuse treatment, and urinalyses; providing Julia visitation with Jackson; and placing Jackson with Julia for a trial home visit. In addition, the trial court noted that OCS made continual efforts to work with and communicate with Julia, and it noted that the Department of Corrections also provided her services.

Julia does not dispute that OCS provided reasonable efforts before the trial home visit ended in January 2011, but she argues that after that time OCS made no further efforts and "simply moved toward termination." Julia's assertion is not supported by the record. OCS continued to provide Julia services following the trial home visit, including a psychological evaluation conducted in February and March 2010 and the

---

[17] *Erica A. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 66 P.3d 1, 7 (Alaska 2003) (citing *E.A. v. State, Div. of Family & Youth Servs.*, 46 P.3d 986, 990 (Alaska 2002)); *Martin N. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 79 P.3d 50, 56 (Alaska 2003) (citing *A.M. v. State*, 945 P.2d 296, 305-06 (Alaska 1997)).

[18] *Barbara P.*, 234 P.3d at 1262 (citing *Burke P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 162 P.3d 1239, 1245 (Alaska 2007)).

[19] *N.A. v. State, DFYS*, 19 P.3d 597, 603 (Alaska 2001).

resulting referral for intensive wrap-around treatment services. As OCS points out, at the time of this evaluation Julia was participating in treatment at Alaska Family Services, and this facility was monitoring her drug use. When she was discharged from that program in April 2011, Alaska Family Services referred her to a residential treatment program; Julia did not follow up on the referral, but instead reunited with Jackson's father and by July 2011was using heroin on a daily basis. In July 2011 OCS updated Julia's case plan to include a requirement that she participate in a hair follicle drug screen, a requirement with which she did not comply. The plan also required Julia to engage in new substance abuse and mental health assessments, participate in weekly urinalysis tests, and reengage in domestic violence education classes. Julia did not communicate with OCS about the plan or any efforts to engage in services.

Julia's social worker testified that in the year following the trial home visit, she had "many conversations with [Julia]" about ways for Julia to address her substance abuse and self-harming behavior issues, her need to connect with a healthy support group in the community, her participation in substance abuse treatment and mental health counseling, and options to help Julia pay for treatment; and that she monitored Julia's progress in therapy. The worker testified that throughout that year she had difficulty contacting Julia and that Julia seldom returned her messages.

Given this evidence, Julia's assertion that after January 2011 OCS made no efforts on her behalf, but instead "simply moved toward termination," is without merit. The trial court's finding on this point is affirmed.

### D. We Reject Julia's Ineffective Assistance Of Counsel Claim.

Finally, Julia argues that the order terminating her parental rights should be reversed because she received ineffective assistance from her trial counsel. Julia raises this argument for the first time in the context of this appeal.

Julia alleges that her trial counsel erred by: (1) not immediately contesting

OCS's action in ending the trial home visit by arguing that Julia was blameless in the incident that led to Jackson being removed from her physical care; (2) not urging OCS to continue making efforts to reunify the family after the trial home visit ended; (3) not challenging the factual allegation in the termination petition that Julia had demonstrated a pattern of involvement in abusive, violent relationships; (4) not presenting evidence at trial that Julia was blameless in the incident that led to the end of the trial home visit; (5) not presenting evidence at trial that Julia had complied with her case plan; and (6) not arguing at trial that Julia's case should have been tried under the provisions of ICWA.

A parent has a due process right to effective assistance of counsel in a termination of parental rights proceeding.[20] Whether this right was violated is a question of law that we consider de novo.[21] We apply a two-pronged test: first, was counsel's conduct either generally throughout the trial or in one or more specific instances at a level that no reasonably competent attorney would provide;[22] and second, has the parent shown that "an improved or more aggressive performance would have made a difference in the outcome of [the] case."[23]

We do not need to address the first prong of the test, because Julia has not shown that any of the errors she alleges would have affected the outcome of her case. Our conclusion that Julia has not provided any real evidence that Jackson is an Indian

---

[20]     *Stanley B. v. State, DFYS*, 93 P.3d 403, 408-09 (Alaska 2004) (citing *S.B. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 61 P.3d 6, 10 (Alaska 2002)).

[21]     *Id.* (citing *S.B.*, 61 P.3d at 10).

[22]     *Id.* (citing *V.F. v. State*, 666 P.2d 42, 46 (Alaska 1983)); *David S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 270 P.3d 767, 786 (Alaska 2012) (quoting *State v. Jones*, 759 P.2d 558, 568 (Alaska App. 1988)).

[23]     *David S.*, 270 P.3d at 786.

child disposes of Julia's sixth point. Our affirmance of the trial court's findings that Jackson was in need of aid because of Julia's substance abuse, and that Julia did not timely remedy that abuse, disposes of Julia's first, third, fourth, and fifth points. And our affirmance of the trial court's finding that OCS made reasonable efforts at reunification throughout the life of this case disposes of Julia's second point.

## IV.  CONCLUSION

For the foregoing reasons we AFFIRM the trial court's order terminating Julia's parental rights to her son, Jackson.

BOLGER, Justice, concurring.

I agree with the majority of the court's memorandum opinion. And I agree that the trial court record does not show any obvious prejudice from the performance of Julia's appointed counsel. But I disagree with the court's decision to review Julia's claim of ineffective assistance of counsel. Julia did not raise this claim in the trial court, and this claim was not related to any of the issues she argued to the trial court. This court generally declines to consider such a claim unless plain error is apparent from the trial court record.[1]

However, it is unlikely that the trial court record will contain evidence of ineffective assistance of counsel when the appellant was represented in the trial court by the same counsel whose conduct she challenges on appeal. In my opinion, this court should avoid direct review of this issue unless the appellant has had a fair opportunity to develop a record.[2]

This disagreement may seem unimportant to the resolution of this case. But the choice between reviewing or declining this claim has important consequences for Julia. Now that the court has decided the issue of ineffective assistance of counsel, this appellate decision may become the law of the case, foreclosing Julia from raising this issue in the trial court.[3] So Julia may now be prevented from raising this claim in a

---

[1]     *See Johnson v. Johnson*, 239 P.3d 393, 407 (Alaska 2010).

[2]     *See Wetherhorn v. Alaska Psychiatric Inst.*, 156 P.3d 371, 384 (Alaska 2007).

[3]     *See Beal v. Beal*, 209 P.3d 1012, 1016 (Alaska 2009) (holding that the law of the case doctrine prohibits reconsideration of issues which have been decided in a previous appeal in the same case).

forum where she has conflict-free counsel to develop a more adequate record. I would decline to review this claim to avoid this unfair possibility.