NOT DESIGNATED FOR PUBLICATION

No. 113,504

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of D.M.M., year of birth 2009, and D.M., year of birth 2014

Persons Under Eighteen (18) Years of Age.

MEMORANDUM OPINION

Appeal from Greenwood District Court; DAVID A. RICKE, judge. Opinion filed May 6, 2016.
Affirmed.

*Ronnie L. McCollum*, appellant pro se.

*Kellie E. Hogan*, of Kansas Legal Services, of Wichita, for appellee.

Before HILL, P.J., PIERRON and GARDNER, JJ.

*Per Curiam*: R.M. (Father) the natural father of D.M.M., born in 2009, and D.M.
born in 2014, appeals from the district court's termination of his parental rights. He also
raises additional procedural claims. Finding no reversible error, we affirm.

In September 2012, D.M.M. and his older step-sibling, J.E., were placed in
protective custody. The State's petition alleged that the children were without adequate
parental care, control, or subsistence not solely due to the lack of financial means,
without the care or control necessary for their health, and had been abused or neglected.
Each child was adjudicated as a child in need of care.

The family was assigned a caseworker who created a case plan – its goal initially
was reintegration. The case plan included specific tasks for Father to complete, which

1

included taking a parenting class, receiving mental health treatment, providing a safe and stable home, and complying with visitation guidelines. The family's caseworker expected these tasks to be completed quickly, but Father was uncooperative and combative.

In July 2013, a new caseworker was assigned to the family. A meeting was held to review the case plan, which Father attended. Although the goal of the case plan was still reintegration, Father had failed to complete his assigned tasks. Another meeting was scheduled for January 2014, but Father did not attend. The case plan's goal was then changed to adoption. The family's new caseworker supported the change because Father did not display appropriate discipline during visits, did not provide adequate attention during visits, did not regularly attend visits, failed to continually receive mental health treatment, and failed to maintain a safe and stable home environment.

In February 2014, D.M. was born. Three days later, on the recommendation of a Department of Children and Families social worker who had spoken with the hospital's social worker, D.M. was placed in protective custody. The State's petition alleged that he was without the care or control necessary for his physical, mental, or emotional health. D.M. was then adjudicated as a child in need of care. Because D.M. was so young, the family's caseworker tried to schedule visits twice a week. But visits were reduced to once a week when the parents failed to attend or cancelled visits, even though the caseworker tried to accommodate Father's work schedule.

In May 2014, the State filed a motion to terminate Father's parental rights. At the termination hearing, Father was in the hallway but would not enter the courtroom. According to Father's counsel, Father requested a jury trial and was under the impression that if he entered the courtroom he would be submitting to the district court's jurisdiction and would be waiving a jury trial. The district court denied Father's request for a jury trial, and Father chose not to testify. After taking the case under advisement, the district court issued two written orders terminating Father's parental rights to both children. The

district court determined that based on the presence of several statutory factors, Father was unfit. The district court also specifically found that Father's unfitness would not change in the foreseeable future and that termination was in the children's best interests. Father timely appeals.

*Father's Unfitness*

When reviewing a district court's finding of unfitness, we employ a clear and convincing evidence standard of review. See K.S.A. 2015 Supp. 38-2269(a). In other words, we consider whether we are convinced that a rational factfinder, viewing the evidence in the light most favorable to the State, "could have found it highly probable, *i.e.*, by clear and convincing evidence" that the parent was unfit. *In re B.D.-Y.*, 286 Kan. 686, 705, 187 P.3d 594 (2008). We "[do] not weigh conflicting evidence, pass on credibility of witnesses, or redetermine questions of fact." 286 Kan. at 705.

Once a child has been adjudicated as a child in need of care, parental rights may be terminated if "the court finds by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 2015 Supp. 38-2269(a). A nonexclusive list of factors that a district court may consider when making this determination is provided in K.S.A. 2015 Supp. 38-2269(b) and (c). Any one factor may, but does not necessarily, "establish grounds for termination of parental rights." K.S.A. 2015 Supp. 38-2269(f). A district court may also consider nonstatutory factors. See K.S.A. 2015 Supp. 38-2269(b). As the petitioner, the State bears the burden of proof. K.S.A. 2015 Supp. 38-2250.

The district court in this case terminated Father's parental rights based on the presence of the following statutory factors:

- K.S.A. 2015 Supp. 38-2269(b)(1)—emotional illness, mental illness, mental deficiency or physical disability that prevents the parent from caring for the child;
- K.S.A. 2015 Supp. 38-2269(b)(4)—physical, mental, or emotional abuse or neglect or sexual abuse of a child;
- K.S.A. 2015 Supp. 38-2269(b)(7)—failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family;
- K.S.A. 2015 Supp. 38-2269(b)(8)—lack of effort on the part of the parent to adjust the parent's circumstances, conduct, or conditions to meets the needs of the child
- K.S.A. 2015 Supp. 38-2269(c)(2)—failure to maintain regular visitation, contact, or communication with the child;
- K.S.A. 2015 Supp. 38-2269(c)(3)—failure to carry out a reasonable plan approved by the court directed toward the integration of the child into a parental home; and
- K.S.A. 2015 Supp. 38-2269(c)(4)—failure to pay a portion of the substitute physical care and maintenance costs.

Father disputes most of the evidence presented at the termination hearing, claiming that several witnesses lied, and that the State's brief is full of lies. But as an appellate court, we are unable to determine the credibility of witnesses. See *In re B.D.-Y.*, 286 Kan. at 705.

After reviewing the record, we conclude that that district court's finding were mostly correct. First, Father was diagnosed with adjustment disorder and narcissistic personality disorder. He was seen by two different psychologists for a total of only 7 sessions, and both discharged him for nonattendance. In 2014, 41 parental visits were scheduled, but Father attended only 9 in person, and another 9 or 10 briefly by phone. Father attended only one family therapy session.

Father also failed to maintain a safe and uncluttered yard. Over time the condition of the yard improved, and when visits were announced there was a noticeable difference, but sustained change did not occur. Father also exhibited a combative and uncooperative attitude. The family's first caseworker limited her involvement in the case because Father had made threatening comments to her. The record also indicates that reasonable efforts were made to rehabilitate the family. The district court also took judicial notice of D.M.M.'s legal file, which showed that he was placed in protective custody because he had numerous bruises, had tick bites, was dirty, was wearing dirty clothes, reported that his house did not have water, and on two occasions no parent was around when he was picked up or dropped off from school.

The only questionable finding made by the district court was its determination that Father had failed to pay a reasonable portion of the cost of substitute physical care and maintenance. The district court made that determination after finding that although Father apparently had a job, the record did not contain any evidence showing he had made any payments. But we are hesitant to conclude that the absence of evidence constitutes clear and convincing evidence. Further, no witness testified about Father's failure to make payments. But that determination is harmless because several other statutory factors were present.

We therefore are convinced that a rational factfinder, when viewing the evidence in the light most favorable to the State, could have found, based on the presence of several of the statutory factors provided in in K.S.A. 2015 38-2269(b) and (c), that Father was unfit. Thus, the district court did not err by finding Father unfit.

*Foreseeable Future*

As noted, a district court may terminate parental rights if "the court finds by clear and convincing evidence that the parent is unfit by reason of conduct or condition which

5

renders the parent unable to care properly for a child *and* the conduct or condition is unlikely to change in the foreseeable future. (Emphasis added.) K.S.A. 2015 Supp. 38-2269(a). The term "'foreseeable future'" is measured from a child's perspective, taking into account his or her perception of time, which can be as little as 7 months. See *In re S.D.*, 41 Kan. App. 2d 780, 790, 204 P.3d 1182 (2009). In predicting a parent's future unfitness, we may look to his or her past history. *In re Price*, 7 Kan. App. 2d 477, 483, 644 P.2d 467 (1982).

In this case, both of the psychologists that saw Father testified that he would benefit from more therapy. The family therapist also believed that more work was needed. But the most significant testimony came from the family's second caseworker. She testified that her primary concern was Father's lack of mental health treatment, and a lesser concern was Father's failure to attend visits. The caseworker further testified that the case was 2 years old, even though Father's assigned tasks could have been completed in much less time. And although Father had made some improvements, the caseworker testified that Father needed more time and the children could not afford to wait for him to make the necessary changes. She also testified that even if Father was given more time, she was not sure Father's condition or conduct would improve. Therefore, the district court did not err in finding Father unfit for the foreseeable future.

*Children's Best Interests*

If the district court makes an unfitness finding, it "shall consider whether termination of parental rights as requested in the petition or motion is in the best interests of the child." K.S.A. 2015 Supp. 38-2269(g)(1). The district court is in the best position to determine a child's best interests because it hears the evidence directly, and we will overturn the determination only if the district court has abused its discretion. *In re K.P.*, 44 Kan. App. 2d 316, 322, 235 P.3d 1255, *rev. denied* October 7, 2010. Judicial discretion is abused when no reasonable person would take the district court's position or

6

when the district court's decision is based on an error of law or an error of fact. *Critchfield Physical Therapy v. The Taranto Group*, 293 Kan. 285, 292, 263 P.3d 767 (2011).

Here, the therapist that supervised the family therapy sessions testified that although more work was needed, continuing therapy was not in the children's best interests because of the amount of time they had already been in custody. She believed that returning the children to Father's care was not in their best interests. The family's caseworker also testified that giving Father any more time to change or make the necessary improvements was not in the children's best interests. Based on this testimony, a reasonable person could have reached the same conclusion that the district court did. The district court thus did not abuse its discretion when it found that termination of Father's parental rights was in the children's best interests. Accordingly, we conclude that the district court did not err by terminating Father's parental rights.

*Father's Additional Claims*

As mentioned, Father also raises additional claims. He first argues that he was denied representation. But Father was appointed counsel on three different occasions, and one of those attorneys represented Father at the termination hearing. Father seems to acknowledge that he was appointed counsel and was represented, but believes that the representation was inadequate or ineffective. Father does not, however, provide any facts in support of his argument, so he has abandoned this issue. See *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 645, 294 P.3d 287 (2013) (stating that issues raised only incidentally in a brief are deemed abandoned). We consider only those issues which Father has briefed and not those he has merely mentioned. See *State v. Boleyn*, 297 Kan. 610, 633, 303 P.3d 680 (2013). Thus we do not address Father's claim that the State of Kansas is conspiring against him and his family, his claim of judicial misconduct, or his claim that several witnesses committed perjury.

7

Father also claims that he had a right to a jury trial. But Father does not cite any authority other than the Twelfth Amendment to the United States Constitution, which pertains to presidential electors so is inapplicable here. Further, termination of parental rights proceedings are civil in nature, K.S.A. 2015 Supp. 38-2201(a), and the right to a jury trial in a civil proceeding is not absolute. *Waggener v. Seever Systems, Inc.*, 233 Kan. 517, 520, 664 P.2d 813 (1983). In reviewing the predecessor to the current code, we have found that "a parent has no constitutional right, either federal or state, to a jury trial in any action pursuant to the . . . Code for Care of Children." *In re Baby Boy Bryant*, 9 Kan. App. 2d 768, 774, 689 P.2d 1203 (1984). Similarly, the current code, the Revised Code for Care of Children, does not provide a specific statutory right to a jury trial. The district court thus did not err by denying Father's request for a jury trial.

Affirmed.